## BOWEN v. BARKSDALE.

1. A note was drawn, payable at twelve months, "with interest from date ten per cent. per annum," and if not paid at maturity, "the interest to be added to the principal and bear interest, and so continue until the note is paid." *Held*, that ten per cent. interest should be added to the principal after maturity of the note annually, thus becoming a portion of the principal and bearing the same rate of interest as the principal until full payment.

2. After the mortgage of a single tract of land, a judgment was obtained against the mortgagor, under which a portion of this tract was assigned by metes and bounds to the debtor as a homestead. In action of foreclosure, to which this judgment creditor was made a party defendant, *held*, that this defendant had the right to require the mortgagee to first exhaust the homestead tract. *State Savings Bank* v. *Harbin*, 18 S. C., 425, approved.

3. Payments made by a surety on the note should be repaid to him out of the proceeds of sale of the mortgaged property, after the payment of the balance due to the mortgagee.

4. Money paid by the son of the principal debtor, and so credited on the note under an agreement with him and with the party in whose possession the note had been placed for collection, that the payer should have an assignment of the note to the extent of such payments, is not entitled to be reimbursed out of the proceeds of sale of the mortgaged premises in priority to judgment creditors junior to the mortgage.

5. Junior judgment creditors being made party defendants to an action for foreclosure, one of them raised an issue, which was decided against him—a decree directing him to pay his own costs, and that the costs of the others should be paid in priority to his judgment, not disturbed.

Before IZLAR, J., Laurens, February, 1890.

This was an action by Emeline Bowen on the note and mortgage described in the opinion of this court. The complaint alleged the note and the credits thereon, the mortgage, the sale of 70 acres, and the release of the mortgage thereon, the payments by Burns, the surety, and also the payments by T. N. Barksdale, "and that an interest in said note and mortgage to said amount has been assigned to him," and that three of the defendants were junior judgment creditors. The Brief contains no answer of Traynham & Dial. Toliver Robertson answered denying, among other things, the payments by T. N. Barksdale, alleging the homestead assignment to N. L. Barksdale of a portion of the land, and demanding that the mortgagee first exhaust this homestead. T. N. Barksdale answered as administrator of Burns, claiming his right to be reimbursed the amount paid by Burns as surety; and he also answered in his own right, setting up his judgment, and claiming also to be an assignee of a portion of the mortgage debt. The mortgagor answered, alleging the homestead assignment, and demanding its confirmation and a sale of only the remainder of the land.

The only testimony that is material to the points decided was that relating to the payments made by T. N. Barksdale. It was as follows:

*N. L. Barksdale:* My son, T. N. Barksdale, made the payments credited to him on the note. These payments were made

out of his own money.   He proposed to pay some amount on
the note if I would give him an assignment, and I consented.
He did not give me the money.   He lived then at Greenville—
in business—and not with me.

X.  I testified before Judge Kershaw as to these payments.   I
said nothing then as to payments by T. N. Barksdale.   No ques-
tion was asked me then about the assignment to him.   My coun-
sel, and Capt. Dial, acting for Mrs. Bowen, told me that day that
Judge Kershaw had refused to allow, and spoke of putting off,
the decision and telegraph for my son.

XX.  This note was in evidence before Judge Kershaw with
the same credits as now.   I made the same statements as to the
payments, except as to the assignment.

*T. N. Barksdale:* I have seen the note.   Capt. Dial, a
brother of Mrs. Bowen. had possession of the note.   I had a
conversation with him about the transfer of interest in the note,
and have receipts.   I bought interest in the note, $420, as stated
by my father.   It was my own money.   The agreement with
Capt. Dial was, that I was to have an interest in the mortgage
for whatever I would pay.   The assignment does not appear on
the receipts on the note.

X.  (Two receipts produced by witness, $100 each, do not show
assignment.)   I took no receipt for the cost, because I saw it
cred ted on the note.

*Albert Dial:* Mrs. Bowen is my sister.   I know this note,
and transact her business.   I took this note to Mr. Barksdale.
It has been in my possession a portion of the time.   Credits of
payments by T. N. Barksdale are in my handwriting.   T. N.
Barksdale paid me the money.   The loose receipts are in my
handwriting.   The agreement was that he was to have that much
interest in the mortgage (no objection), but not put in that shape
on the note.   The intention was to show that he had paid the
money.

X.  The agreement was when the payments were made, not
before.   I and T. N. Barksdale made the agreement.   I do not
know that she (Mrs. Bowen) knew of the agreement.   There was
no instruction of me by her.   It was no injury to her or any
creditor.   This was my impression.

The Circuit decree, omitting its statement, was as follows:

Under the circumstances of this case, I am of the opinion that the double fund doctrine is clearly applicable, and that the plaintiff should be required to sell the homestead tract, on which the judgment creditors have no lien, first. At the time Traynham & Dial obtained their judgment, N. L. Barksdale was the owner of a tract of land containing two hundred and fifty acres, which was covered by the lien of plaintiff's mortgage. This condition of things was not changed when Toliver Robertson and Thomas N. Barksdale obtained their respective judgments. These lands were worth more than the homestead allowed by law, as was shown by the set-off made in November, 1887. Ninety-five acres, including the dwelling house, were set off by metes and bounds as the homestead of the defendant, Nathan L. Barksdale, leaving one hundred and fifty acres subject for sale for his debts, the plaintiff having a lien on the whole two hundred and fifty acres of the debtor, N. L. Barksdale, under the mortgage, and the judgment creditors having a lien only on one hundred and fifty acres thereof under their judgments. The homestead tract of ninety-five acres, although adjoining the one hundred and fifty acres, is clearly defined by the plat, as also the one hundred and fifty acre tract. These two tracts of the debtor, N. L. Barksdale, furnish two distinct sources of payment for the creditors. Both are subject to sale for the payment of the plaintiff's mortgage debt, while only one is subject to sale for the payment of the debts of the judgment creditors. A clearer case for the application of the double fund doctrine could hardly be presented.

The second question must also be answered in the affirmative. Christopher Burns was the surety of N. L. Barksdale. While it is true that the surety is a debtor, and is bound, like his principal, to full payment; yet when the whole debt is paid, he can enforce the right of subrogation. "The same principle of equity which substituted the surety on paying the whole debt in place of the creditors, will equally extend and apply to the surety paying a part *pro tanto* to the extent of the payment." Dixon, Subrog., p. 123. It seems to me that a proper case for the equitable relief demanded on behalf of the surety is here presented. Part

10—33

payment has been made by the surety; if, therefore, full payment of the residue is made out of the proceeds arising from a sale of the mortgaged premises, of the principal, the surety would be entitled then to stand in the place of the creditor who has been fully satisfied, and to be reimbursed out of any surplus that may remain from a sale of the property of his principal, to the extent of the partial payments made by the surety. All the necessary parties are before the court, and all the rights and equities of the several and respective parties can be easily determined and protected in the present action.

· The third question presented must be answered in the negative. There is nothing in the evidence submitted which satisfies me that Thomas N. Barksdale has any interest, equitable or otherwise, in the note and mortgage, which is the subject of this action. There is nothing which convinces me that he acquired any interest in said note and mortgage by assignment, either actual or by operation of law, in consequence of the payments claimed to have been made by him thereon. As to the payments claimed to have been made by him, he must look to Nathan L. Barksdale, against whom he has recourse by direct action at law, as for money paid for the use of N. L. Barksdale.

· The plaintiff is entitled to a judgment of foreclosure and sale of the mortgaged premises for the balance due on her mortgage debt. In ascertaining this balance, another question must first be determined. This question involves a construction of the note or obligation as regards the rate of interest after maturity. The makers of the note or obligation promise to pay to the plaintiff, twelve months after its date, with interest from date at the rate of ten per cent. per annum, eight hundred dollars; and if not paid at maturity, the interest to be added to the principal and bear interest, and so to continue annually until the note is paid. That is, the interest was to be added to the principal annually and bear interest, and this was to continue to be done until the note was paid. I am of the opinion that under a proper construction of the contract the note or obligation only bears interest at the rate of ten per cent. per annum until maturity, and that after maturity it only bears interest at the rate of seven per cent. per annum on both the principal and interest. I have, there-

fore, made the calculation according to this rate, and find that there is now due and remaining unpaid upon the mortgage debt of the plaintiff the sum of one hundred and eighty dollars and fifty cents.

It is therefore adjudged, that the mortgaged premises described in the complaint (save and except the seventy acres heretofore sold and conveyed to W. H. Barksdale and released by the mortgagee from under the lien of the said mortgage) be advertised and sold, &c. ; * * * that said master, in making sale of the mortgage premises, shall offer for sale first the ninety-five acre homestead tract of the defendant, N. L. Barksdale, and then the tract of one hundred and fifty acres, as designated on said plat, and that said master keep the proceeds of said sale separate ; that out of the proceeds arising from the sale of the homestead tract of ninety-five acres, said master pay, &c. * * * But if the proceeds arising from the sale of the homestead aforesaid be insufficient to pay the sums heretofore ordered to be paid thereout, that said master pay such deficiency out of the proceeds arising from a sale of the one hundred and fifty acre tract, and after making all the foregoing payments, as hereinbefore ordered and directed, if there still remain a surplus, that said master pay out of said surplus, first, the costs of defendant, Traynham & Dial, and of Toliver Robertson and then the judgment debts of Traynham & Dial, Toliver Robertson, and Thomas N. Barksdale, in the order of their legal priority, or so far as such surplus will pay the same; if there remain a balance after paying said judgments in full, that said master hold said balance subject to the further order of the court; that the defendant, Thomas N. Barksdale, pay his own costs.

From this decree plaintiff appealed, alleging error in the conclusions of law, that the note bore only seven per cent. interest after maturity, and in requiring plaintiff to exhaust the homestead tract first.

The defendants, N. L. Barksdale and T. N. Barksdale, appealed upon the grounds that the note bore interest after maturity at ten per cent. on the principal and the annual interest; that T. N. Barksdale was entitled to be repaid his credits on the note out of the mortgage premises, and was an assignee of the

mortgage to that extent; and that the judgments should be paid before the costs of Toliver Robertson. T. N. Barksdale alleged further error in directing him to pay his own costs; and N. L. Barksdale alleged further error in not confirming to him his homestead, and in not directing the remaining tract to be first sold, and in failing to allow him a homestead after the mortgage debt was paid.

*Messrs. Haskell & Dial*, for appellant.

*Messrs. Ferguson & Featherstone*, for defendants, appellants.

*Mr. W. H. Martin*, for Robertson, respondent.

June 21, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In February, 1875, the defendant, N. L. Barksdale, with the defendant, Burns, as his surety, made and executed to the plaintiff a sealed note, of which the following is a copy:

"$800. Twelve months after date, with interest from date, ten per cent. per annum, we, or either of us, promise to pay Emeline Bowen eight hundred dollars, for value received, and if not paid at maturity, the interest to be added to the principal and bear interest, and so continue until the note is paid. Witness our hands and seals, February 26th, 1875.

(Signed)          N. L. BARKSDALE, [SEAL.]
                  CHRISTOPHER BURNS, [SEAL.]"

Barksdale secured this note by a mortgage of certain real estate situate in Laurens County, containing three hundred and twenty-nine acres, more or less, which was executed at the same time of making the note, the mortgage being duly recorded, &c. Several payments were made on this note by Burns, the surety, and certain payments were also made thereon by the defendant, T. N. Barksdale, a son of the defendant, N. L. Barksdale, who also had made certain payments thereon, but these credits did not pay the note in full. In April, 1884, defendant, N. L. Barksdale, sold to W. H. Barksdale a portion of the mortgaged premises, some seventy acres, for $300, which amount being credited on

the note, the land thus sold was released from the mortgage. Some time after the execution of the mortgage, defendants, Traynham & Dial, Toliver Robertson, and T. N. Barksdale, each recovered judgments against the said N. L. Barksdale for certain amounts, and under the judgment of Traynham & Dial a homestead of ninety-five acres of the land was set off to the said N. L. Barksdale, including the dwelling house and adjoining lands, which was confirmed by the court, leaving one hundred and fifty acres of the mortgaged premises, of which a plat was made, representing the land after deducting the portion sold to W. H. Barksdale above and the homestead.

Under these circumstances, the action below was instituted by the plaintiff to foreclose her mortgage for the balance due on her note. The judgment creditors were all made parties, and the following questions arose and were decided by his honor, Judge Izlar, before whom the case was tried : 1st. The rate of interest which the note of plaintiff should bear after maturity. 2nd. Whether the plaintiff should be required to exhaust the homestead before going upon the other land, under the double fund doctrine. 3rd. Whether Christopher Burns, the surety, was entitled to be subrogated to the rights of the plaintiff in the mortgage and note to the extent of the payments made by him thereon, after satisfaction of the balance of said note. 4th. Whether T. N. Barksdale was entitled to such subrogation for the payments made by him. Upon the first question, his honor held and decreed that the note bore interest after maturity only at seven per cent., both as to the principal and the annual interest. Upon the second, he decreed that the double fund doctrine was applicable, and that the plaintiff should be required to sell the homestead tract, the proceeds to be applied to her debt before going upon the proceeds of the remainder of the land. Upon the third, he held that Christopher Burns, the surety, was entitled to stand in the place of the plaintiff, for his payments on the note, as to any remainder of the proceeds of sale of the mortgage premises, after the plaintiff was paid the balance due on her note. Upon the fourth, he held that there was nothing in the evidence which satisfied him that T. N. Barksdale had any interest, equitable or otherwise, in the note and mortgage. And he adjudged and decreed a sale of the mortgage

premises (excluding the portion sold to W. H. Barksdale), with direction as to the application of the proceeds in accordance with his rulings and holdings as above.

The appeal involves and raises the question of the correctness of these rulings, and also a question as to the costs of Toliver Robertson and of T. N. Barksdale, hereafter to be noticed.

The first question as to the rate of interest the note should bear after maturity, is a question of intention, to be reached by a proper construction of the terms of the note itself under the light of the cases involving like questions. No doubt but that the general rule as to notes due several years after date, with interest from date at a higher rate than 7 per cent., is, that the interest after maturity drops down to 7 per cent., the legal rate, in the absence of a contract for a higher rate. This is upon the ground, that the note in such a case shows by its terms that the promise to pay the higher rate terminates at the maturity. When, however, the note is due at the end of twelve months, or at a shorter period, and the promise is to pay the interest annually, this term has been construed to carry the promise as to the interest forward to the ultimate payment of the principal, and at the rate specified in the note, because, otherwise, the word annually would have to be eliminated from the note entirely, which could not be done without altering the note.

Now, here the note was to mature at twelve months, with ten per cent. interest from its date, and with the promise, if not paid at maturity, then the interest to be added to the principal and bear interest, and so to continue annually until the note is paid. There can be no doubt but that the parties understood and meant that some interest should be added to the principal after maturity each year, and bear the same interest as the principal, and this was to continue until the note was paid in full. Now, what rate of interest was thus to be added annually? The only rate of interest mentioned in the note was ten per cent., and we think this was the rate referred to where the terms, "the interest," were used, indicating the interest which was to be added to the principal annually after maturity. In endeavoring to reach the intent of parties to an instrument of any kind, every word therein must be given its proper meaning. Tested by this rule, we think the

construction of his honor to the note here was erroneous. We think that ten per cent. should be added to the principal after maturity of the note annually, thus becoming a portion of the principal, and bearing the same interest as the principal.

As to the application of the double fund doctrine, we think his honor was correct. Here were two tracts of land, to wit, the homestead, set off by metes and bounds, and the 150-acre tract. True, these two portions of land had originally been incorporated together, and formed but one tract, but when the question below was made, this tract had been divided into the homestead and the 150-acre tract, so that it was distinctly known what the judgments had lien on, and what the mortgage covered. We think *Bank* v. *Harbin* (18 S. C., 425) is authority here, and sustains the ruling of his honor.

There can be no doubt but that his honor was correct in holding that the payments made by Christopher Burns, the surety, and for him, should come in immediately after the mortgage debt was paid; in fact, this is not contested in the appeal. We see no reason for disturbing the findings and holdings of his honor as to the payments made by T. N. Barksdale, nor as to his decree upon the matter of the costs.

. It is the judgment of this court, that the judgment of the Circuit Court be modified as to the rate of interest of the mortgage debt, as hereinabove adjudged, and that in all other respects it be affirmed. Let the case be remanded, so that the judgment herein may be enforced.