FOOS GAS ENGINE CO. v. FAIRVIEW LAND & CATTLE CO. et al.   (No. 893.)*

(Court of Civil Appeals of Texas. Amarillo. March 15, 1916. Rehearing Denied April 19, 1916.)

1. DAMAGES ☞79(4)—LIQUIDATED DAMAGES —CONTRACT—DELAY.

Where a land company contracted for the digging of certain wells, known by the contractor to be intended for irrigation of the land, and the failure to complete which in time for the irrigating season prevented the company from raising any crops during that season, and rendered useless the work done in preparing the land for crops the damages were, in their nature, impossible of ascertainment, and a stipulation for liquidated damages for each day's delay in the completion of the wells, not obviously unconscionable, was a stipulation for compensation for the loss, and not a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 167; Dec. Dig. ☞79(4).]

2. TRIAL ⊗═370(2)—SPECIAL ISSUES—EXCLUD-ED ISSUES—FINDING BY THE COURT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that on appeal an issue not submitted and not requested shall be deemed as found by the court in such manner as to support the judgment, the trial court, which specifically excluded from the jury an issue which none of the parties requested can itself determine such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 885; Dec. Dig. ⊗═370(2).]

3. CONTRACTS ⊗═305(1)—BREACH—WAIVER OF DAMAGES—RESCISSION.

Where an engineering company delayed the completion of a well intended for irrigation far beyond the time set for completion, so that it would be of no use for irrigation that season, and then informed the land company's superintendent that it would have to remove that machinery to another well but would install other machinery to complete that well, the president's statement that he did not care whether another well was put down; that it was getting late—if it could be construed as a mutual abandonment of the contract, did not waive the land company's right to damages for the previous delay.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398–1400, 1467–1475; Dec. Dig. ⊗═305(1).]

4. GARNISHMENT ⊗═50 — PERSONS SUBJECT — POSSESSION OF PROPERTY.

A land company, garnisheed in an action against an engineering company which had been digging wells on its land cannot be held liable for the value of machinery of the engineering company left on the land but not in the possession of the land company.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 92; Dec. Dig. ⊗═50.]

5. TRIAL ⊗═350(1) — SPECIAL ISSUES — EVIDENCE.

A special issue, not supported by the record, should not have been submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828; Dec. Dig. ⊗═350(1).]

6. SUBROGATION ⊗═28—RIGHT TO—PAYMENT OF DEBT.

The rule that a surety on a note is not entitled to subrogation to the payee collaterally secured, unless the whole debt secured by the collateral is paid, does not prevent subrogation for a part of the debt paid by the surety, where the balance was paid by the principal.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 51–59; Dec. Dig. ⊗═28.]

7. APPEAL AND ERROR ⊗═1073(7)—HARMLESS ERROR—IMMATERIAL ERROR—GARNISHMENT.

Plaintiff, in garnishment proceedings, cannot object that the judgment for a creditor having priority was excessive, where the correct amount of the claim would exceed the amount due from the garnishee.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4245; Dec. Dig. ⊗═1073(7).]

8. APPEAL AND ERROR ⊗═1043(3)—HARMLESS ERROR—IMMATERIAL ERROR.

Plaintiff in garnishee proceedings cannot complain of errors in rulings affecting mechanic's liens, where the claim of the debtor's assignee exceeded the amount due from the garnishee.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4117; Dec. Dig. ⊗═1043(3).]

9. APPEAL AND ERROR ⊗═169 — PRESENTING QUESTIONS IN LOWER COURT—OBJECTIONS TO EXCEPTIONS BY OTHER PARTIES.

In garnishment proceedings, where other claimants to the fund were joined as defendants and still others intervened, one of such defendants, who made no objections and saved no exceptions to the rulings of the court at the trial, cannot question such rulings on appeal by adopting the assignments of plaintiff, who had made objections and saved exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018–1034; Dec. Dig. ⊗═169.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Garnishment proceedings by Foos Gas Engine Company against Fairview Land & Cattle Company and others. From a judgment of the court fixing the amount due from garnishee at an amount less than the preferred claims, plaintiff appeals. Affirmed.

Veale & Lumpkin, of Amarillo, and Cooper & Merrell, of Houston, for appellant. C. E. Gustavus, M. J. R. Jackson, Madden, Trulove, Ryburn & Pipkin, Ben. H. Stone, C. H. Yost, and Turner & Rollins, all of Amarillo, and Sam. G. Bratton, of Clovis, N. M., for appellees.

HENDRICKS, J. In 1913 the Hickcox-Whyman Engineering Corporation was under contract with the Fairview Land & Cattle Company to drill five certain wells on the property of said Land & Cattle Company, four of which are designated in this record as the "four small wells"; the other as "the large well." The wells were to be dug in accordance with certain specifications, providing for certain excavations and tanks of certain dimensions, with dykes, with a stipulation in said contract that if the same were not completed within the time specified, $10 per day for delay in the completion of the small wells and $20 per day as to the large well would be paid as liquidated damages by the Engineering Company. The Foos Gas Engine Company, the appellant herein, was a creditor of the Engineering Company to the amount of about $7,000, and sued said company in the district court of Potter county, aiding it with a writ of garnishment, served upon the Fairview Land & Cattle Company.

The appellee Land & Cattle Company answered by setting up its contract with the Engineering Company that the latter had agreed to construct and equip the four small wells at a cost of $4,400, and a large well at a cost of $3,900, alleging a failure to construct all the wells within the time prescribed, or according to specifications, and that on August 7, 1913, after notice, it declared the contracts at an end, and resumed possession of its lands; that the work done upon the four small wells was not worth over $3,514.34, pleading that it had expended certain amounts and was required to expend a further amount for the completion of said small wells; and that, after deducting the

⊗═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

liquidated damages, owing by the Engineering Company, for delay to all the wells, it did not owe said engineering corporation more than $1,543.24, tendering the same into court. The appellee Land & Cattle Company also filed a separate cross-action and enumerated certain parties who were claiming liens upon its property on account of labor performed or material furnished, making them parties to the suit.

There were also several interventions in the case by other parties holding the same character of claims, setting up their alleged liens and praying for a participation in the fund.

We particularly call attention to the intervention of the Amarillo Hardware Company, claiming an indebtedness of $668.51, against the engineering corporation, with interest thereon at the rate of 6 per cent. per annum, based upon a judgment obtained September 30, 1913, against said corporation, the Hardware Company also alleging that on the 7th day of July, 1913, the defendant engineering corporation executed and delivered to it an assignment and transfer of $3,600, out of any sum due by the Land & Cattle Company, to secure the payment of the account, which thereafter had been merged into the judgment, and a certain note of $3,348.24, dated May 2, 1913, with 10 per cent. interest and 10 per cent. attorney's fees, alleging the payment of the note, but also claiming the collateral as a continuous security for the payment of the $668.61.

D. L. Hickcox and one Busby were sureties for the engineering corporation, on the $3,300 note, executed by it, as principal, to the Hardware Company. The total satisfaction to the Hardware Company of said note consisted of a payment of $1,725.19 by Hickcox; the balance paid by the engineering corporation. Hickcox also intervened, alleging his previous suretyship on said note, the total satisfaction of same as above stated, and the part payment by him of the $1,725, and a transfer of said note for the balance paid by him, also setting up the transfer of the well-drilling contract to the Hardware Company as collateral security for the note, and that by his part payment he was subrogated to that company's rights in the sum paid, with interest.

The case was submitted to the jury upon special issues, who found that the engineering corporation did not substantially construct the four small wells and reservoir in compliance with the written contract, and that these particular wells were received by the appellee on August 7, 1913; that it was necessary for appellee Land & Cattle Company to expend $600, to have the wells and reservoirs substantially conform to the contracts; that the larger well was mutually abandoned on July 1, 1913; that the company, under the contracts (excluding the question of liquidated damages), was indebted to the engineering corporation, for work on the four small wells, in the sum of $3,800; that the Land Company terminated the contract for the larger well on July 1, 1913, and answered that said company did not have in its possession any effects of the engineering corporation, but that certain machinery of the value of $1,600 was still upon its lands. The record also shows that the Land Company, on August 7, 1913, wrote the engineering corporation that the latter had breached the contract, declaring the same at an end, stating that it would resume exclusive possession of its premises, and did not waive its right to damages. The Fairview Land & Cattle Company made a motion for judgment as to the liquidated damages, claiming delay of 83 days of the four small wells in violation of the contract, at $10 per day, aggregating $830, and a delay as to the large well of 21 days, at $20 per day, aggregating $420. The appellant and appellee Fairview Land & Cattle Company seem to agree, according to their briefs, that this motion was sustained by the court, which accounts for the judgment against the Land & Cattle Company, in the sum of $2,550, the court deducting $1,250 as liquidated damages.

The appellants' thirty-first and thirty-second assignments are, in substance, as follows: (1) That the trial court erred in entering judgment for the sum of $2,550, because the jury found that the garnishee owed the engineering corporation, at the time it filed its answer, the sum of $3,800, and that said garnishee had in its possession effects belonging to the engineering corporation of the value of $1,600, as evidenced by the jury's findings; (2) the court erred in entering judgment in accordance with the motion of the garnishee, and allowing the Land & Cattle Company the offset as liquidated damages, the sum of $10 a day, for the reason that there is no testimony showing that the garnishee suffered any damages on account of the wells not having been completed.

[1] The thirty-fifth assignment complains of the court's failure to enter a judgment for the full $3,800, as found by the jury, for the reason that it was not shown that the garnishee suffered any actual damages, and because the liquidated damages stipulated in the contract constituted a penalty, and could not be recovered unless actual damages were shown. The proposition under the thirty-first assignment is that the only judgment that could be rendered by the trial court was one in conformity with the verdict rendered upon the special issues submitted to the jury. Both parties agreeing that the judgment of the court for $2,550 against the Land & Cattle Company was the result of a finding by the court of liquidated damages, deducted from the jury's verdict of $3,800, and a sustaining of appellee Land & Cattle Company's motion, our consideration is, as affecting these assignments: First, can the liquidated

damages be maintained? and, second, did the court have the right to make the offset?

The jury found that none of the small wells were completed according to specifications when the appellee took possession. The testimony was that the Land & Cattle Company intended to use the land around the wells during 1913, for the purpose of irrigation, but were not able to do so, these wells being intended for that purpose; that the company broke the land, leveled the same for irrigation, and constructed ditches, and shows that if the four small wells had been finished by May 15th, it would have been in time to have farmed the lands for that year, and if it could have obtained the large well by June 10th, other land also could have been irrigated and farmed by the use of that well; that the company had men and teams for the purpose of doing the farm work, and used them to some extent, but without any benefit, and made no crops at all, and unable to make any for that year, not being able to plant anything. It is easily seen that the damages resulting to the Land Company are difficult of ascertainment. We think the compensation for the breach was evidently fixed in consequence of this difficulty, in estimating such damages. Indianola v. Railway Co., 56 Tex. 606-608; City of Marshall v. Atkins, 127 S. W. 1151. The purpose of the use of the wells was known and understood by each party. It is impossible to measure the prospective loss to the company on account of the deprivation of the use of the wells, as no crop was planted, and, as inferable, none should have been unless the wells could have been used within the time.

"If the damages be in their very nature uncertain or their amount indeterminate, the sum specified will be treated as fixing by stipulation the amount of the recovery." Collier v. Betterton, 87 Tex. 442, 29 S. W. 468.

We are not able to say that the stipulations in the contract are obviously unconscionable; and, the parties having provided for the compensation to be paid in the event of the loss, under the conditions as shown here, we think the contract should control.

[2] As to the other question involving the right of the court to reduce the verdict with the liquidated damages, we think article 1331 of the act of 1897 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1985) is applicable. The failure to submit an issue is not error unless one has been requested in writing by the party complaining of the judgment.

"Upon appeal or writ of error, an issue not submitted and not requested, shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such finding."

The trial court, in submitting the issue of damages, specifically excluded the question of liquidated damages from the jury, and the parties were upon notice of the manner of submission, as well as the fact of intended reservation by the court of that issue. The trial court could not have submitted ac-

tual damages in this case resulting from delay as to the use of the land because none were proven, nor could have been proven. Justice Williams of the Supreme Court said, in Moore v. Pierson, 100 Tex. 113, 117, 94 S. W. 1132, 1134:

"The consequences must necessarily be that when the trial court had expressly submitted some issues and excluded others, and neither party has put in writing a request for the submission of those excluded, they must be regarded in the appellate court as having acquiesced in such action and consented for the trial judge to determine from the evidence the issue not submitted."

[3] The jury did answer that the Land & Cattle Company and the engineering corporation mutually agreed to abandon the construction of the larger well about July 1, 1913, but the testimony of an agreement is a statement by the president of the engineering corporation, to the effect that he remembered meeting Mr. Hayes, the president of the Land Company, at the large well about the first of July, or the last of June; that he had a conversation with him at that time in regard to the work on this well; that he told Hayes he had to move the machinery away, and that Hayes said he did not care whether we put in another hole down there or not, and Hayes said, "It was getting late anyway, and he kind of objected—that was just about the time we were moving." This well was a total failure at that time, and the engineering corporation was moving their machinery to Randall county, for the purpose of digging the Miller well. Hickcox said they had no other rig to dig another large well for the Land Company, but was going to hire one, and told Mr. Hayes he would put up another rig and dig another hole. The time had expired under the contract for the completion of this well. The intended use and benefits from that well, or of a substitute for that year, were not in sight. It is rather difficult to say, legally speaking, that the digging of the large well had been mutually abandoned when the evidence shows that it had been, in fact, unilaterally abandoned, by one of the parties. If the speculative statement of the president of the engineering corporation that he would obtain another "rig" and dig another well had materialized, the time consumed very naturally was a material element to the Land Company. We do not think at least that under the conditions and the contract it could be considered that the Land Company, through its president, Hayes, at that time waived any of its rights. The liquidated damages to the extent of $20 per day had already accrued, and a new well, if dug, would not remove them. The Supreme Court has said that an agreement terminating a contract does not necessarily effect a discharge of the parties from liabilities incurred under it. In such a case—

"the liability * * * must be referred to the terms of the agreement to cancel; and, in order to interpret that agreement, we must look to

the intention of the parties, the character of the contract to be canceled, and the situation of the parties at the time, as well as the attending facts and circumstances which throw light upon the question of intent. If it appears from these facts and circumstances that it was not the intention of the parties that the act of cancellation should have a retroactive effect to destroy previously vested rights, then the contract will be so construed as to preserve those rights." Ala. Oil & Pipe Line Co. v. Sun Co., 99 Tex. 612, 92 S. W. 254 (citing numerous authorities).

If the conversation mentioned could be stretched to a mutual abandonment or rescission of the contract, we think under the conditions that the damages and matured rights were not waived. Whatever view the trial court considered the matter, we think, in permitting liquidated damages as to the large well, his action was correct.

[4] It is clear that the Land & Cattle Company could not be held liable to the extent of $1,600, the value of the machinery upon its premises, under the further finding that such machinery was not in the possession of said company.

[5] The sixteenth assignment of error is a complaint that D. L. Hickcox is not entitled to subrogation to the security of the Amarillo Hardware Company on account of Hickcox's partial payment, and not the whole payment, of the debt secured by such collateral. The proposition under the assignment is:

"It is a well-settled rule that before subrogation can be enforced the debt must be paid and substitution cannot be made as long as the debt of the party * * * remains unsatisfied. * * * *"

The point is also made that the jury found, in response to a submission by the court, that it was agreed that the assignment by the engineering corporation of its well-drilling contract to the Amarillo Hardware Company should not pass as security for the payment made by D. L. Hickcox to said Amarillo Hardware Company when the note was satisfied. There was no such issue made in this record, and should not have been submitted. Appellant's own statements under the assignment exhibits its inappropriateness:

"E. W. Hardin, the president of the Amarillo Hardware Company, testified that the contract of the Fairview Land & Cattle Company, was sold to the Amarillo Hardware Company, with the understanding that the same would be accepted by the Cattle Company, which was not done, and thereafter the Amarillo Hardware Company, by agreement, held the same for the purpose of securing the indebtedness due it by the engineering corporation, which indebtedness consisted of one note for $3,348.24, and an open account, which was reduced to judgment, in the sum of $668.61, on September 30, 1913."

[6] Appellant's position that the whole debt, secured by the collateral, is required to be paid before subrogation can exist (as held by the authorities Cason Bros. v. Connor et al., 83 Tex. 26, 18 S. W. 668, and Beville v. Boyd, 16 Tex. Civ. App. 491, 41 S. W. 670, 42 S. W. 318; to which could be added Slaughter v. Boyce, 170 S. W. 261, by

this court) is not applicable to this case. The cases and the rule must be applied to the facts. Literally, appellant states the general rule correctly, but there can be no objection where one is obligated and required to make a partial payment of a whole debt, dropping in behind the principal creditor as to the fund, as was done in this case. Sheldon on Subrogation (2d Ed.) § 127, states the general rule as appellant announces it. He says, however (section 128, top p. 193):

"If the surety has made partial payments upon a debt secured by a mortgage from the principal debtor, then upon foreclosure any surplus proceeds over the amount needed to pay the creditor in full must be applied to repay the surety."

See, also, Bowen v. Barksdale, 33 S. C. 142, 11 S. E. 640.

There can be no objection to the claim of the Amarillo Hardware Company, which was reduced to judgment before this litigation in the amount of $668.51, except that under the evidence it did not have the collateral, which is wholly untenable.

[7] D. L. Hickcox obtained judgment for $2,200, and there is no objection by the Foos Gas Engine Company to the amount, or, for the purpose of participating in the fund, that it is excessive. However, if the correct amount had been established, in accordance with Faires v. Cockerell, 88 Tex. 437, 31 S. W. 190, 639, 28 L. R. A. 528, where a surety is subrogated to the securities held by a creditor on account of payment, still, such correct amount, added to the Amarillo Hardware Company's claim, would be more than the amount of the judgment in this case.

[8] The numerous demurrers and objections raised by assignments of the appellant, as against the interveners and defendants, setting up their different liens as laborers and materialmen, become immaterial, in so far as appellant is concerned, if the court's judgment, according to the questions as presented, can be sustained, for the sum of $2,550.

Believing that no complaint, sufficient to reverse the court's action, referable to the question of liquidated damages (deducted by the court from the jury's verdict), is presented, and that the claim of Hickcox is correctly sustained in the main, and that the Amarillo Hardware Company's recovery cannot be denied, appellant's objection against the laborers' and materialmen's claims, even if any were tenable, are wholly fruitless to it as a practical question—the two claims mentioned, with the laborers and materialmen out of the way, would more than absorb the judgment.

[9] The court, in his judgment, classified the claims according to certain priorities of payment, with which we are not in reality concerned. With the exception of D. L. Hickcox there is no objection in this appeal with reference to the classification and participation as decreed by the court. It is true that

Hickcox adopts all the assignments of the Foos Gas Engine Company, questioning the liens of the laborers and materialmen as to the pleading and the evidence, and prays in his brief for a better position in participating in the fund arising from the judgment against the Fairview Land & Cattle Company. We are unable to find any objections or any exceptions by him in any manner to the assertion of any of the claims by any other interveners or defendants. His pleading is also devoid of any such status. Without any complaint in the lower court, by the mere adoption in this court of the objections of one who resisted such matters in the trial court, Hickcox is in no position to resist the judgment.

Upon the whole, we think the judgment of the lower court should be affirmed. Affirmed.