### R. M. BEVILLE v. O. E. BOYD.

Delivered July 5, 1897.

**1. Subrogation—Principal and Surety—Promissory Note.**

A surety on a note who pays it and has it indorsed to him is entitled to sue thereon and recover from the principal maker the attorney's fees provided for therein, the same as the original holder might have done.

**2. Attachment—Wrongful Issue.**

If the statement in the affidavit that plaintiff will probably lose his debt unless attachment issues be untrue, the attachment is wrongfully sued out.

APPEAL from Wise. Tried below before Hon. J. W. PATTERSON.

*Bullock & Tankersley* and *Spencer & Basham,* for appellant.

*R. E. Carswell,* for appellee.

The Reporter has been unable to obtain copies of the briefs.

STEPHENS, ASSOCIATE JUSTICE.—Appellant was surety for appellee to the Wise County National Bank on a promissory note in the sum of $1000, which provided for interest at the rate of 10 per cent per annum, "and 10 per cent additional as attorney's fees, if sued upon or placed in the hands of an attorney for collection." When the note matured, and without its ever having been placed in the hands of an attorney for collection, appellant paid it off, or rather took it up and had it indorsed to him, by executing his own note payable at a future date. The bank also held a small note (of $66) against the appellee, which was in the same transaction assigned to appellant.

This was an attachment suit brought against appellee by appellant, in which the affidavit for attachment stated that the appellee was justly indebted to the appellant in the sum of $1178.95, which was the total amount of the two notes, principal, interest, and attorney's fees. The petition, however, merely alleged the execution, payment, and assignment of the two notes, without alleging that either of them had ever been sued upon or placed in the hands of an attorney by the bank, or that appellant had paid the amount specified therein as attorney's fees, and prayed to have judgment for said sums of money and costs of suit, without naming any sums. That is to say, the petition on its face showed a less sum to be due than was stated in the affidavit for attachment, unless appellant was entitled to recover the amount of the attorney's fees specified in the larger note.

Upon this ground the appellee moved to quash the attachment, and pending this motion the appellant amended his petition, alleging that the $1000 note had been placed by the bank in the hands of attorneys for collection, and that he had paid not only the principal and interest, but also the amount of attorney's fees  The trial developed that there was no

truth in this allegation whatever, and that the evident purpose of it was to uphold the attachment. The court, however, sustained the motion, notwithstanding the amended petition; and to this action the first error is assigned.

First, was the change made by the amendment essential? and second, was it effectual?

In Carpenter v. Minter, 72 Texas, 370, it was expressly held that a surety paying off the note was entitled to sue upon it and recover the attorney's fees therein provided for from the principal maker, the same as the original holder might have done. This very just rule, which allowed a complete, and not merely a partial, substitution of the surety to the rights of the original creditor against the principal debtor, became the rule of decision in this State as early as 1857. Sublett v. McKinney, 19 Texas, 439.

The reason of the rule was thus stated, in the case last cited, by Justice Wheeler: "These latter cases, while they hold the general doctrine that the surety is entitled to every remedy which the creditor has, and to have an assignment of all the securities in the hands of the creditors, yet deny him the right of complete substitution to the rights of the creditor, by having assigned to him the very obligation upon which he was surety, upon this technical idea, that the payment by the surety is an extinguishment of the obligation, and the assignment of it would transfer that which, being extinguished, is no longer any security. But this narrow technical view of the case has not received the approbation of courts of equity generally in this country. The subject was examined with great learning, research, and ability by the Supreme Court of Georgia in the case of Simpkins v. Mills, 4 Georgia, 343, and the doctrine of the two English cases last cited was discarded, as opposed to the great weight of authority, English and American, as unsound in principle, and unfit to have a place in the enlightened remedial justice of a court of equity. The principle which supports the right of substitution to the rights and remedies of the creditor applies equally to his right to have a transfer of the particular obligation or contract as to any other security. 'The substitution of the surety,' it is pertinently said, 'is not for the creditor as he stands related to the principal after the payment, but as he stood related to him before the payment. He is subrogated to such rights as the creditor then had against the principal; one of which unquestionably was to enforce his bond against the principal.' Id., 349. This is certainly the correct deduction from the universally admitted right of substitution. For if the doctrine were sound, that the obligation on which the surety was bound can not be assigned, because it is extinguished by the payment, it would apply equally to every other security, and destroy the right of substitution altogether. For the payment of the debt operates as complete an extinguishment in equity, of every collateral security, as it does of the obligation of the principal security. So it has been uniformly held by this court in the case of mortgage and other securities."

Following this rule so early and ably enunciated, and a decision

directly in point, which was adopted by our Supreme Court as late as 1888 (Carpenter v. Minter, supra), appellant sued out his attachment, February 12, 1895, a few months before the case of Faires v. Cockrell, 88 Texas, 428, was decided, in which the opinion of Justice Brown purports to overrule this line of decisions. Following this opinion, the district judge quashed the attachment. If the case of Faires v. Cockrell be not distinguishable from the case at bar, and the opinion of Justice Brown, in so far as it purports to overrule Carpenter v. Minter, be not obiter, this action of the District Court, though never so detrimental and unjust to appellant under the circumstances, ought not to be disturbed by this court.

After a careful examination of the cases and the principal involved, we have reached the conclusion that the case of Faires v. Cockrell is not itself in necessary conflict with the line of decision followed by appellant in suing out his attachment. It was not the case of a surety who had paid the debt of his principal claiming the right of complete substitution to the position of the creditor, but of a co-obligor seeking contribution on account of his having discharged more than his proportion of the common and equal burden. The question there involved, too, was one of limitation. In the nature of the case, the suit for contribution could not well be maintained on the original obligation. Equality is equity; and where no primary obligation rests upon any particular co-maker of a written instrument, one such co-maker who pays more than his share can only ask for contribution, and subrogation goes no further than is necessary to reimburse him for the overpayment. But where one stands as mere surety for another, it does not lie in the mouth of the principal debtor, for whose accommodation he has become bound, to deny him any of the rights which the contract gave the common creditor, when he is forced to become the creditor himself by the failure of his principal to discharge the duty of payment resting primarily on such principal. This would not be equality and not equity. Of course equity would not allow the surety to speculate off his principal by taking up the note at a discount and then recover the full amount.

In the opinion in Faires v. Cockrell, it is said: "There is no advantage in having the unsecured debt assigned." That was true in that case, but not so here. The original holder of the note had the advantage of enforcing its collection at the expense of the maker, and unless the note providing for attorney's fees be assigned to the paying surety, he loses this advantage. It is characteristic of equity to do justice, and not by halves. The true principle is to allow the surety the option of suing on the original obligation as assignee in equity, or on the implied assumpsit. Any other rule fails to do complete justice, and is unworthy of a place in enlightened equity jurisprudence.

As to the objection arising out of partial payments, the sufficient answer is that it is laid down by the elementary writers that the surety is not entitled to subrogation until the whole debt is paid. To avail himself of such remedy he must pay all. Sheldon on Subrogation, sec. 127.

This author treats at considerable length of the right of the surety to be subrogated to the benefit of the original obligation, and shows that when his work was published (1882) the rule recognizing such right had been "pretty generally adopted in the United States," as well as in. England, citing only four States in which it had been denied. Sheldon on Subrogation, secs. 137, 138.

It seems to us that all of our decisions may be substantially reconciled by observing the distinction between cases of substitution and contribution. Jackson v. Murray, 77 Texas, 644, was a case of contribution between cosureties, and the opinion was written by the same learned judge who wrote the opinion in Carpenter v. Minter, and both decisions were approved by our Supreme Court without any suggestion of conflict. What was said in the opinion of Justice Lipscomb, in Holliman v. Rogers, 6 Texas, 91, on this subject was obiter. After disposing of the question under consideration in that case, arising upon the exclusion of evidence, he proceeds to give an additional reason for reversing the trial court's action, but only upon a hypothetical case, for he says: "The record does not disclose whether the two last named were securities of the former or not." A dictum thus announced, but which has been in effect overruled for forty years, can hardly, we think, be said to amount to an irreconcilable conflict of decision.

It may be that it is not strictly logical to draw a distinction between the case of a co-obligor who seeks contribution for paying more than his share of the common undertaking and that of a surety who pays the entire debt of the principal; but if such a distinction has long been practically recognized, and a long line of decisions can be upheld by still observing it, there is high authority for following the precedents rather than the behests of logic, notwithstanding any apparent inconsistency. In Chase v. Swayne, 88 Texas, 223, for instance, Justice Brown used this language: "There is in the case of Cameron v. Fay an apparent inconsistency in holding that Cameron, who had a materialman's lien upon the buildings insured and the lots upon which they stood, had no right to have the proceeds of the insurance policy upon those buildings applied to the discharge of his lien, and at the same time holding that the proceeds of the policy were so far impressed with the character of the property insured as to exempt the money due thereon from the payment of the debts of the policy holder, because the property insured was exempt. This inconsistency upon the same questions exists in the decisions of many other States, but it is the more obvious in that case, because both questions were decided in the same case."

As appellant acted upon a rule of decision nearly as old as the State itself, and followed a precedent sanctioned by our Supreme Court directly in point—the cases being exactly alike—he should not be deprived of rights so fixed if it can be avoided. If the decisions can possibly be reconciled, they should be allowed to stand. We have concluded that they can, and that it is our duty to determine this case in accordance with the views above expressed.

From this conclusion it follows that the amendment of the petition was unnecessary. It is not, therefore, necessary to determine whether, had the petition been insufficient, the defect was amendable, though the following cases cited by appellee seem to sustain his contention that it was not. Avery & Son v. Sander & Co., 77 Texas, 207; Lutterloh v. McIlhenny Co., 74 Texas, 75; Evans & Martin v. Tucker, 59 Texas, 250; Marx & Kempner v. Abramson, 53 Texas, 265.

The fifth assignment complains of the following instruction to the jury: "You are instructed, that if at the time said attachment was sued out plaintiff would not have probably lost his debt if said attachment had not been issued, then said attachment was wrongfully sued out."

Before an attachment is issued the statue requires that the affidavit shall show the necessity therefor, by stating that the plaintiff will probably lose his debt unless it is issued. The plea in reconvention set up that this statement of the affidavit was false, as one ground for the contention that the attachment was wrongfully issued. The issue was also raised by the evidence. We are therefore of opinion that it should have been submitted to the jury.

This charge was given at the request of the appellee, and the objection that the main charge confined the issue to the question of a fraudulent disposition of the debtor's property, which was the other ground set up in the plea in reconvention, can not avail the appellant, because if there was any error in this manner of submitting the issues, it was evidently to the detriment of the appellee.

Appellant's brief contains no other assignments of error except as to the costs.

The judgment quashing the attachment will be reversed and here rendered against appellee and the sureties on his replevy bond for the amount due under the attachment, after deducting the sum recovered on the plea in reconvention, and in other respects affirmed, with the costs of both courts taxed against appellee.

*Reversed and rendered.*

### ON REHEARING.

#### October 23, 1897.

STEPHENS, ASSOCIATE JUSTICE.—The motion of appellee for rehearing cites, as an authority with which our disposition of this appeal conflicts, the recent case of Willis v. Chowning, 40 S. W. Rep., 395 (90 Texas, 617). It was there held (column 2, page 396), that "when the principal debtor in an obligation, to which there are sureties, dies, the payee may look to the sureties as primarily liable to perform the contract, and need not present the claim to the administrator for allowance and payment." Numerous authorities were cited to sustain this proposition.

To further strengthen the position taken and dispose of the contention urged, that a surety ought not to be held liable for a debt which the cred-

itor was barred by limitation from collecting from the estate of the principal debtor, the learned judge who wrote the opinion, in the course of the argument, used this language: "Although the debt may be barred, yet judgment may be entered against the surety if he be liable thereon, in cases where suit may be maintained against the surety without joining the principal; and if the surety pay the debt which is at the time barred by limitation as against the principal, but is a valid obligation against the surety, such surety may recover against the principal or against his estate in case of his death. The right of action in favor of the surety arises when he pays the debt, and is not based upon the original debt itself, but upon the implied contract which exists at law between the principal and surety in such cases."

That the right of action in favor of the surety arises when he pays the debt, and not before, and that it arises out of the relation or implied contract between the principal and surety, we freely concede. We do not hold that he *must* sue upon the original or express contract, but only that he *may* do so. To quote from our original opinion, "the true principle is to allow the surety the option of suing on the original obligation, as assignee in equity, or on the implied assumpist." His cause of action does not arise till he discharges his obligation to the creditor, and it is founded upon the relation of principal and surety created by the original contract; but in order to save him completely harmless, equity steps in and subrogates him to all the rights of the creditor against the principal debtor, assigning to him, so far as may be necessary to make good the implied obligation of the principal debtor to indemnify the surety, the original obligation as well as every mortgage or other security collateral thereto.

To hold that equity will assign to him the collaterals, the mere incidents of the original obligation, and not the obligation itself, when to do less would entail a loss upon the surety, seems to us both illogical and inequitable, and so it evidently seemed to the Supreme Court of this State when Justice Wheeler wrote the opinion from which we quoted on the original hearing, the reasoning of which still seems to us unanswerable.

In Willis v. Chowning, then, not only were the authorities cited sufficient to sustain the ruling there made, but also the further and able argument of Justice Brown appears to be complete, without holding that the surety *must*, but only that he *may*, sue upon the implied contract, a proposition which, we think, in no way conflicts with our decision in this case. If, in addition to this remedy, the surety desires to avail himself of the benefits of the original obligation he has only to satisfy the creditor and sue the principal debtor upon it before it is barred by limitation.

The motion also cites Cleveland v. Carr, 40 Southwestern Reporter, 406, from the Court of Civil Appeals for the First District. What was there said (page 409, column 2, and page 410) upon the question at issue here was solely with reference to another trial, and, though supported by other authorities, is undoubtedly in conflict with Carpenter v. Minter, 72 Texas, 370, and that line of cases which doubtless Faires v. Cockrell, 88

Texas, 428, was understood to overrule, but which we think, for the reasons given in our original opinion, should still be followed.

The motion is therefore overruled.

*Rehearing denied.*

Writ of error granted. Judgment of Court of Civil Appeals was reversed and judgment of District Court affirmed by Supreme Court. Boyd v. Beville, 91 Texas, 439.