## BERING MFG. CO. v. W. T. CARTER & BRO. et al.  (No. 504–4081.)

(Commission of Appeals of Texas, Section B. May 27, 1925.)

1. Corporations ⟴503(2)—Corporation sued on claims for rescaling timber and cutting timber by mistake in county of suit not entitled to be sued in county of domicile.

Corporation, sued on claims for expenses of rescaling timber, and for mistakenly cutting timber where not permitted to do so, held not privileged to be sued in county of its domicile, where contract was actually signed, in view of Rev. St. art. 1830, subd. 24, the cause of action arising at least partly in county of suit where timber was scaled and cut, and in which it had a representative.

2. Action ⟴45(4)—Action for expenses of rescaling timber not misjoined with action for having mistakenly cut timber.

Action for expenses of rescaling timber, based on agreement, held not misjoined with action for having cut timber under mistaken idea that it had right to cut it by virtue of the agreement since being action in nature of detention, and not ex delicto, could be joined with former action arising ex contractu.

3. Logs and logging ⟴3(15)—Variance between proof and complaint in action for taking timber not shown.

In action for value of timber taken under mistaken idea that it was included in original contract for exchange of timber, and for which taker agreed to compensate owner, complaint based on refusal to convey to plaintiffs timber equal to amount taken held in nature of action on contract, and not action in tort for conversion, so as to create variance between pleading and proof.

4. Limitation of actions ⟴118(2)—Delay in service of citation at defendant's request after filing petition will not raise bar to running of statute.

Where petition was filed and defendant notified of suit, delay in service of citation at defendant's request for negotiations and settlement, and that no further costs be incurred, held not to raise bar, effectuated by filing of suit, to running of 4-year period of limitation (Rev. St. art. 5688), the only statute applicable to case.

5. Limitation of actions ⟴46(6)—Action for value of excess timber cut under exchange contract not barred, in view of subsequent agreement.

Action based on contract for exchange of timber for value of timber cut in excess of quantity contracted for, held not barred where brought within statutory period after repudiation of subsequent executory agreement for conveyance of timber, to be thereafter executed to satisfaction of parties, and which was not performable on demand, so as to start statute running from date of contract.

6. Appeal and error ⟴1094(1)—Question of fact not reviewable.

On appeal to Supreme Court from Court of Civil Appeals, whether finding is without support in evidence will not be reviewed.

7. Logs and logging ⟴10(1)—Party agreeing to pay rescaling cost not relieved, by mutual abandonment, of costs theretofore accrued.

Where one of parties to timber exchange contract was dissatisfied with scaling, and agreed to pay costs of rescaling unless it showed error of 1,000,000 feet, abandonment of rescaling agreement before completion, by mutual consent and through no fault of party doing work, held not to relieve the other from liability for costs theretofore accrued.

Appeal from Court of Civil Appeals of Ninth Supreme Judicial District.

Action by W. T. Carter & Bro. and others against the Bering Manufacturing Company. From an order of the Court of Appeals (255 S. W. 243), reforming and affirming a judgment for plaintiffs, defendant appeals. Affirmed.

See, also, 265 S. W. 205.

Carothers & Brown, of Houston, for appellant.

Feagin & Feagin, of Livingston, and Baker, Botts, Parker & Garwood, of Houston, for appellees.

SHORT, J. This suit was filed in Polk county by W. T. Carter & Bro., a partnership, against the Bering Manufacturing Company,

a private corporation, and for convenience we will designate the parties as the partnership and the corporation; respectively. The original petition was filed January 25, 1917, and was based alone upon a claim for compensation for a rescaling of about 50,000,000 feet of timber, about one-half of which was owned by the partnership, and the other was owned by the corporation, and which had been cut by the respective parties under a written contract dated May 17, 1907. The expenses forming the basis of this suit were incurred in the years 1912 and 1913. There was a first amended original petition filed some years later, the transcript not showing the file mark, in which the cause of action was more elaborately stated. On the 22d day of June, 1921, the partnership filed a second amended original petition, in which, in addition to the original cause of action, it embraced a claim for damages growing out of the fact that, in carrying out the contract dated May 17, 1907, the corporation had by mistake cut 128,000 feet of timber on land not embraced in the contract. The damages were laid at $2,000, the items of expense amounting to $1,608.82, and the remainder covered the alleged value of the 128,000 feet of timber. Citation on the original petition was issued in due time, but in fact, was never served, service being waived with certain restrictions, and an answer filed December 18, 1920, the trial court rendered judgment in favor of the partnership for the full amount of the expense of rescaling and the value of the 128,000 feet of timber, plus the interest, amounting to $3,063.95, together with interest thereon from date of the judgment which was rendered on the 10th day of June, 1922. The corporation having duly perfected its appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District, that court reformed the judgment of the trial court by excluding $423.95, which it found to be the amount allowed the partnership for interest by that name, and, as reformed, affirmed the judgment of the trial court. The corporation made an application to the Supreme Court, which was granted, and the notation made as follows: "We are inclined to the view that the item of 128,000 feet of timber was barred by limitation." The opinion of the Court of Civil Appeals is reported in 255 S. W. 244–253, inclusive, and we refer to that opinion for a detailed statement of the facts found by the Court of Civil Appeals. Such facts as we think material to our decision will be noted by us in this opinion.

The record shows that the corporation rested its right to have the judgment of the trial court reversed by the Court of Civil Appeals upon 68 assignments of error. One or more of several major questions are germane to all of these assignments. One of these major questions is whether the district court of Polk county had jurisdiction either of the subject-matter or of the original defendant, who is the plaintiff in error here; another is whether the pleadings of the original plaintiff, who is the defendant in eror here are legally sufficient to sustain the judgment; another is whether the claim for expenses for rescaling the timber was barred by the statute of limitations, and again, whether the claim for the 128,000 feet of timber cut was barred by the statute of limitations, either of 2 years or 4 years. These questions were duly and properly presented, and have been preserved, and are properly before this court for determination.

[1] The partnership and corporation in 1907, as well as at the time the suit was brought and the several amendments filed, each was the owner of a sawmill plant located in Polk county, and, so far as this record discloses, owned the timber used by their several plants. The principal office of the corporation appears to have been located in Houston, Harris' county, and the actual signing of the contract of May 17, 1907, occurred at Houston, and it may be assumed that the contract was made at Houston. The corporation claimed the right to be sued in Harris county. The partnership filed a contest, and, testimony having been introduced, the trial court in its findings of fact, which appear in the record and which are rather voluminous, held that the motion to change the venue should be overruled, and it was accordingly done, and due exceptions taken by the corporation. These findings of fact show that the cause of action arose in Polk county, and they further show that the corporation had a representative in Polk county. Paragraph 24 of article 1830 of the Revised Civil Statutes provides that suits against any private corporation may be commenced in any county in which the cause of action or a part thereof arose, or in which such corporation has an agency or representative. The expenses upon which the original petition was based were incurred by the partnership in pursuance of a conditional agreement that the timber should be rescaled. This timber was originally growing on lands located in Polk county. The data necessary to determine the amount of the timber cut from the several tracts could only be secured by going on the ground. The parties engaged in rescaling the timber did in fact go on the ground. It was in contemplation of the parties that they should go on the ground. This particular cause of action arose in Polk county. Moreover, the corporation had a representative in Polk county. Its business could not have been conducted without having a representative in Polk county. The rescaling grew out of the transaction represented by the contract of May 17, 1907, which was to be performed in Polk county. Likewise, the item for damages involved in the cutting of

the 128,000 feet of timber by mistake grew out of the same transaction represented by the contract of May 17, 1907, which, as has been said, required its performance in Polk county. In other words, the transaction arose in Polk county, and was to be performed in Polk county. It could not have been contemplated by the parties, at the time the contract of May 17, 1907, was executed, that it should be performed in any other county. The provisions of performance within a particular county need not be expressed if the obligation assumed be such as from the words of the contract, must necessarily be performed there. Gaddy v. Smith (Tex. Civ. App.) 116 S. W. 164; Darragh v. O'Connor (Tex. Civ. App.) 69 S. W. 645. See, also, authorities cited by the Court of Civil Appeals in support of its opinion on this subject in this case, 255 S. W. 248.

We therefore conclude that the trial court did not err in overruling the plea of privilege filed by the corporation to be sued in Harris county, and that the Court of Civil Appeals was correct in sustaining this action of the trial court.

[2] It is strenuously contended by the very learned counsel representing the corporation that the pleading was insufficient to sustain the judgment, and especially that there was a misjoinder of the causes of action by reason of the alleged claim that the suit for expenses incurred in the rescaling was a suit based on a contract, and that the amended petition which embraced the claim, growing out of the mistake in cutting the 128,000 feet of timber, was a suit based on a tort, and therefore there was a misjoinder of causes of action. The second amended petition, with the exception of the allegations of the names and residence of the parties and the prayer, contained 8 paragraphs, all of which relate specifically to the matters pertaining to the item of expenses for rescaling. However, in making these allegations, the original plaintiff gave a detailed history of the transaction, culminating in the making of the contract dated May 17, 1907. The remaining paragraph specifically relates to the claim for damages resulting from the mistake in cutting the 128,000 feet of timber on another tract of land not mentioned in the contract, but believed to have been embraced in it by the corporation at the time the timber was cut. After discovering its mistake, this timber was scaled, and agreement reached that satisfaction should be made by delivering to the partnership an equal quantity of timber belonging to the corporation. In other words, the 128,000 feet of timber was assumed to have been embraced within the terms of the original contract, which contemplated that an equal quantity of timber should be exchanged between the parties when the contract should finally be completed, but the corporation claims that it committed a tort when it cut this 128,000 feet of timber, and that, having committed a tort, no suit based upon that tort should be joined with a suit on an open account. The cutting of this timber was not a breach of the contract of May 17, 1907. In truth and in fact, this particular timber was not included in the contract. However, without any negligence on the part of the corporation, it cut the timber under the mistaken idea that it had a right to cut it by virtue of the contract, and, so far as its rights are concerned, the measure of damages was determined by the terms of the contract.

It may be said that the cause of action for the expenses of rescaling the timber was based on a conditional agreement, and that the cause of action for having mistakenly cut the timber, under the circumstances, was based on detention. That an action of debt and of detinue may be joined has been decided as far back as Chevalier v. Rusk, Dall. Dig. 613. This case has been approved in Galveston Railway v. Dowe, 70 Tex. 11, 7 S. W. 368; I. & G. N. R. Co. v. Donalson, 2 Willson, Civ. Cas. Ct. App. § 238; St. Louis Ry. Co. v. Moss, 9 Tex. Civ. App. 7, 28 S. W. 1038.

In the case of Galveston Ry. Co. v. Dowe, Judge Gaines says:

"Our system of procedure is essentially equitable in its nature, and was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy;" citing Chevalier v. Rusk, Dall. Dig. 611; Binge v. Smith, Dall. Dig. 616; Clegg v. Varnell, 18 Tex. 294.

But the corporation says that it converted the timber and therefore committed a tort, and an action for conversion is an action founded in tort. In the case of Cardwell v. Masterson, 27 Tex. Civ. App. 591, 66 S. W. 1121, Justice Gill holds that an action against a tenant to foreclose a landlord's lien is properly joined with an action against others for conversion of property subject to the landlord's lien, and uses this language:

"The fact that the cause of action against Masterson was for breach of contract, and that against appellees sounded in tort, does not render this holding unsound. Had the conversion been subversive of the rights of both the appellants and Masterson, the suit, as against appellees, would have been none the less one of tort, and yet it is well settled that in such case the appellees could have been properly joined. Cobb v. Barber, 92 Tex. 309, 47 S. W. 963."

In the case of Cobb v. Barber, 92 Tex. 309, 47 S. W. 963, Chief Justice Gaines says:

"Our system does not favor the bringing of a multiplicity of suits, and therefore permits all causes of action growing out of the same transaction to be joined."

Note the peculiar application of this language to the facts in this case. It is true that the cutting of the 128,000 feet of timber was not done by virtue of the terms of the contract of May 17, 1907, but, by reason of the good faith of the corporation in mistakenly believing that it had the right to cut this timber, the cutting of it grew out of the same transaction as the account sued on for rescaling the timber. In fact, it is equally true that the rescaling of the timber was not a part of the original contract evidenced by the instrument dated May 17, 1907, but it grew out of the same transaction of which the contract dated May 17, 1907 was a part just as the cutting of the 128,000 feet of timber grew out of the same transaction of which the contract was a part. Common-law authorities state the general rule to be that, when the same plea may be pleaded and the same judgment given on all the demands, or when the same judgment is to be given though the pleas be different, they may be joined. Binge v. Smith, Dall. Dig. 616; Morris v. McKinney, Dall. Dig. 621; Clegg v. Varnell, 18 Tex. 302. In all systems known to us the distinction between suits arising ex contractu and those arising ex delicto is recognized, and the joinder of actions arising ex contractu and those arising ex delicto is forbidden, except in those instances in which the two grow directly out of, or are immediately connected with, the same matter. The exception to this general rule is as well recognized as the rule itself. The Court of Civil Appeals finds as a fact that the items of expense for rescaling the timber, and the item of the value of the 128,000 feet of timber cut by mistake, directly grew out of and are immediately connected with the same matter. Stewart v. Gordon, 65 Tex. 344; Railway Co. v. Shirley, 54 Tex. 148.

[3] The corporation, however, contends further that there was a fatal variance between the allegations in the petition and the proof introduced in support of these allegations, in so far as the item for damages growing out of the 128,000 feet of timber is concerned, because there is no allegation of any promise to pay therefor, and no liability predicated on this promise, but that the partnership's suit for the value of this timber is a suit in tort for conversion. The Court of Civil Appeals finds as a fact that this timber was cut under the mistaken idea that it was included in the original contract, and that after this mistake had been discovered the parties agreed to settle this particular transaction as though it had been included. According to the terms of the original contract, the difference in the amount of timber cut from the land belonging to the respective parties should be liquidated in timber. The Court of Civil Appeals further finds as a fact that the corporation agreed to compensate the partnership for this 128,-000 feet of timber by conveying to the partnership other timber. The further fact was found that the corporation had failed to do this. Evidently this failure created an implied promise to pay the market value of this 128,000 feet of timber. Such being the findings of fact, this court is under the necessity to accept these facts as true, and, based upon these facts, we think the pleadings sufficient as against a claim of variance between the allegations and the proof. The particular definition which the parties may give to a pleading is not material, where the nature of the transaction is fully set forth in the pleadings as in this case. The theory of the corporation is that this 128,000 feet was converted by it at the time it was cut. The theory of the partnership is that this timber was converted by the corporation at the time the partnership was notified by the corporation that the latter did not recognize its liability arising out of the mistake made in cutting it, but the Court of Civil Appeals found, as heretofore stated, that the parties had agreed to ignore the mistake, and to settle this item by the terms of the original contract to the mutual satisfaction of the parties. This finding makes the transaction one of contract rather than one of tort, and makes the liability of the corporation dependent upon this agreement and its conduct with relation thereto after the agreement had been made. Such being the situation, the action therefor is one arising from a contract rather than one arising from any supposed tort which had been committed.

It is alleged in the petition of the partnership that the corporation, under the agreement, cut from the partnership land 128,000 feet of timber in excess of the quantity of timber owned by it, and conveyed by the agreement for the exchange of timber, so that the defendant failed and refused to deliver that excess, and that thereafter the plaintiff demanded of the corporation that it procure and convey to plaintiffs timber equal to the 128,000 feet, but that the defendant was unwilling and unable to do so, by reason of which the plaintiffs were entitled to recover the market value, which market value the defendant had after demand refused to pay. Disposing of the questions of pleading raised by the corporation, it may be said that the petition was sufficient to state a cause of action under the exceptions made thereto which, excluding the question of misjoinder of causes of action, amounted to no more than a general demurrer, and that the judgment has cured whatever defects, if any, which might have been pointed out by special exception.

[4] The corporation further contends that the partnership's claim for expenses, incurred by the latter in rescaling of the timber, was barred by the statute of limitation of 2 and 4 years. This contention is based

upon the fact that, while the suit based upon these items was filed in due time, and while the citation thereon was issued in due time, yet, since no citation was ever served, and no waiver of service was made until more than three years after the sut was filed, that the status of the transaction growing out of these expenses was such as to enable the corporation to successfully plead the statute of limitations of four years. The Court of Civil Appeals finds that the original petition was filed January 17, 1917, and, on January 20th following, the corporation was notified in writing that this suit had been filed, shortly after which notification the corporation made a request of the partnership to stop the suit, and accompanied this request with the statement that the same would be settled; that citation was issued on the 6th day of February, 1917, and placed in the hands of the partnership's attorney, but that the citation was not served by reason of the reliance by the partnership upon the promise of the corporation to settle the controversy, and that upon the transpiring of events showing a want of intention on the part of the corporation to settle the controversy, the partnership proceeded to secure acceptance of service, and that this conduct on the part of the partnership constituted due diligence and established its good faith in filing suit. The partnership having filed the petition before the statute of limitations had run against the claim, and, as evidence of its bona fide intention to prosecute the suit, had caused citation to be issued to the proper county before limitation had run against the claim, and it appearing that the service of citation would have incurred an unnecessary item of cost, in view of the statement of the corporation that the controversy would be settled, and the reliance upon that statement, and the suit having been diligently prosecuted immediately after knowledge had been brought to the partnership that the corporation did not intend to settle the controversy, the filing of the suit stopped the running of the statute of limitations against the claim upon which the suit was filed, and protected the partnership against this plea under the facts, since the filing of the suit interrupted the running of the statute, and the failure to have citation served would not revive it unless the partnership was responsible for its nonservice. The filing of a petition in a court of competent jurisdiction is a commencement of a suit, and stops the running of the statute of limitations, unless the plaintiff by some affirmative act or declaration becomes responsible for the delay in having the citation issued or served. The delay was occasioned by the voluntary act of the corporation. This act was one upon which the partnership had a right to rely. It did rely thereon until it was notified that its reliance was unfounded. It acted immedi-

ately by securing an acceptance of service, and prosecuted the suit originally filed with due diligence. We hold that the statute of limitations as to the items of expense involved in the claim for rescaling the timber could not be successfully interposed under the facts found by the Court of Civil Appeals, and that no error was committed by the trial court in refusing to sustain this plea of limitation under the 4-year statute of limitation, which alone applies under the facts found to have been proven. Article 5688, Revised Statutes, and the authorities cited by the Court of Civil Appeals in its opinion in this case, 255 S. W. 248.

[5] The corporation further contends that the claim for the market value of the 128,000 feet of timber as set forth in the plaintiff's second amended petition, filed June 22, 1921, was barred by the statute of limitations of 2 years and of 4 years, since it appears that up to the time of the filing of this amendment no suit had been filed based upon this claim, and this particular timber had been cut more than 10 years previous thereto. The Court of Civil Appeals finds that on the 24th day of March, 1914, the corporation duly acknowledged that it was due and owing to the partnership this 128,000 feet of pine timber, and agreed to convey to the partnership a like amount. It further found that thereafter there were negotiations between the parties looking to a settlement and adjustment of all their differences, including the conveyance of the 128,000 feet of timber, but that this conveyance of this timber was delayed from time to time until about the 3d day of November, 1920, on which date for the first time the corporation notified the partnership that it did not intend to supply the timber or to pay therefor.

The Court of Civil Appeals further finds that during all of the time these negotiations were pending the partnership relied upon the written acknowledgment of the corporation that it would make conveyance of the timber or pay therefor a reasonable value when all the matters in controversy between them were adjusted, and within two years after receiving such notice that the corporation had repudiated its agreement to convey the timber or to pay therefor the partnership filed the second amended original petition. The legal question involved in this case under these facts is, when did the alleged cause of action based upon the item of 128,000 feet of timber in favor of the partnership arise? The corporation contends that it arose when the timber was cut more than 10 years before this amended petition was filed. The partnership contends that it arose when the corporation notified it that it did not intend to convey this amount of timber or to pay for it. If the theory of the corporation is correct, then it was the legal duty of the partnership to have demanded of the corporation

the market value of the timber cut by mistake within two years after it was cut, and upon failure to comply with such demand to have instituted a suit based upon the wrongful cutting of the timber and the unlawful failure to pay for it, in default of which the partnership lost the right to compel the corporation to pay the market value for the whole of that timber or any part of it. The record does not disclose when the parties discovered that this timber had been cut from land which was not included in the contract of May 17, 1907.

It is a fair inference from the facts found by the Court of Civil Appeals that the corporation cut all of the timber it was entitled to cut under the contract within four years from the date of the contract, since it appears that when the parties attempted to rescale this timber such a length of time had elapsed that much of the necessary data had disappeared from the land. However, it furthur appears that there was a partial ascertainment of the facts growing out of the transaction, evidenced by the contract of May 17, 1907, on March 24, 1914, on which date notice was duly taken of the fact that this 128,000 feet of pine timber, cut by mistake from land belonging to the partnership by the corporation under this contract, should be included in the amounts of the timber cut by the corporation for which it was bound to account to the partnership in the general settlement under the terms of the original contract, which was, in effect, that the corporation should convey to the partnership the amount of timber necessary to equalize the amount of timber which the partnership had conveyed to the corporation. According to the theory of the partnership, under the facts found by the Court of Civil Appeals, it did not have the legal right to institute a suit against the corporation to establish its right finally to have adjusted its claim growing out of the original cutting by mistake of this 128,000 feet of timber, on account of the fact that there had been no final settlement between the parties, and the further fact that the corporation recognized and acknowledged its obligation to the partnership growing out of the cutting of this 128,000 feet of timber by mistake, and had agreed to include it under the terms of the contract in the final settlement of all matters growing out of the transactions arising from the contract. There had been no final settlement of these matters.

This court is compelled to accept the facts found by the Court of Civil Appeals. Since the facts found by the Court of Civil Appeals are that the parties had recognized this 128,000 feet of timber as being within the terms of the contract, and the corporation had agreed to transfer to the partnership that amount of timber, and expressly stated that this would be done to the satisfaction of both parties, clearly this agreement was an execu-

tory one. Its termination depended upon a contingency which, in its very nature, was a continuing one until the partnership had been notified in the letter of June 9, 1920, by the corporation's attorney to the partnership's attorney, informing the partnership, in effect, that it would not comply with this agreement. Up to the time that this letter was written and delivered, the partnership, according to the facts found by the Court of Civil Appeals, had no legal right to bring suit against the corporation to enforce the terms of that agreement. The obligation to transfer 128,000 feet of timber to the satisfaction of both parties, under the facts found by the Court of Civil Appeals, was not an obligation which the partnership could have enforced at any time it saw fit, so long as the corporation was engaged in a reasonable effort to comply therewith. Limitation against the right of the partnership to a compliance with this part of the agreement did not begin to run against it until the obligation was repudiated on June 9, 1920. Up to that time, while the obligation existed on the part of the corporation, the right to compel its performance by the partnership did not exist, for the reason that the record is silent of any intimation that the corporation had repudiated this part of the agreement until the letter was written and delivered. This agreement contains the following recitation:

"This deed is not intended to include 128,000 feet of pine timber yet to be transferred by the party of the second part to the parties of the first part, which on computation by the party of the first part after the close of scaling and balancing the account was found to be yet due from the party of the second part to the party of the first part, which will hereafter be done to the satisfaction of both parties."

The language, "which will hereafter be done to the satisfaction of both parties," renders this part of the agreement, evidenced by the instrument dated March 24, 1914, executory in its nature, and the beginning of the period of limitation depended upon the knowledge brought to the partnership that the association had repudiated this part of the agreement.

In the case of Abercrombie v. Shapira, 94 S. W. 392, the Court of Civil Appeals holds that where the owners of certain lands contracted to make title to the same to a vendee, when the land was surveyed and divided and the land was never surveyed nor divided, limitations began to run against the vendee's right to a conveyance from the time that it appeared that the vendors did not intend to divide or survey the land. So in this case limitation began to run against the partnership's right to have transferred by the corporation 128,000 feet of pine timber from the time it appeared that the corporation did not intend to transfer the timber. The general rule is that a right of action does not accrue upon a contract until it is executed or a con-

tingency which may have formed a part of the contract has happened. The construction of the instrument dated March 24, 1914, in so far as the language quoted is concerned, is that it was to be performed at a time and place and in a manner to be arranged by the parties to their mutual satisfaction, and that until the terms of the performance had been worked out, or until one of the parties had repudiated the agreement, no cause of action accrued. This particular matter was apparently a trivial one in comparison with the magnitude of the transaction, which involved the handling of 50,000,000 feet of timber, and covered a period of several years and the expenditure of much labor and capital. Many details had to be worked out; many facts had to be ascertained, and conflicting claims had to be adjusted. Seven years after the original contract had been made, it was ascertained that the corporation had used 821,953 feet of timber belonging to the partnership more than the corporation had used belonging to the corporation, independent of the 128,000 feet, and, according to the terms of the contract dated May 17, 1907, the corporation was under obligation to convey that much timber to the partnership, and according to the terms of the agreement dated March 24, 1914, the corporation also obligated itself to convey, in addition to the 821,953 feet, the 128,000 feet, using the language in reference thereto, "which will hereafter be done to the satisfaction of both parties." Evidently, this language gave much latitude to the transaction with reference to the handling of the item of 128,000 feet of timber, and indicated that there were to be future conferences and other negotiations in which both parties had a right to a voice in order to reach a way towards an adjustment to the satisfaction of both parties. A contrary construction would have compelled the partnership to make a demand upon the corporation at once, and, upon a refusal to comply with this obligation on the part of the corporation, the statute of limitations would have begun to run. We do not believe that such a meaning was contemplated by the parties, and, if the parties did not contemplate that this meaning should be placed upon this language, then it is not within the province of the court to do so. In 17 Ruling Case Law, par. 121, p. 755, the rule is stated:

"Where some condition precedent to the right of action exists whether it be a demand and refusal or some other act or contingency, the cause of action does not accrue, nor does the statute begin to run, until that condition is performed. Thus, if a debt is not absolutely or presently due, but either the obligation to pay or the time of payment is contingent on the performance of some act, the happening of some event or the lapse of a specified period of time, then the happening of the event is a condition precedent to the present obligation to pay, and the debtor is not in default nor the creditor entitled to call for performance until the condition is fulfilled and the statute cannot begin to run until that time."

This rule is quoted with approval in the case of Ewing v. Schultz, 220 S. W. 625, in which the Court of Civil Appeals of the First District holds that a claim is not barred by limitations until the contingency has happened which, under the terms of the transaction, would set the statute in motion. No time was specified in the instrument dated March 24, 1914, for the delivery of the timber, so that the running of the statute of limitations must necessarily begin upon a demand and refusal to perform this part of the contract. According to the findings of fact by the Court of Civil Appeals in this case, the partnership never made any demand and the corporation never refused until June 9, 1920. Taylor v. Rowland, 26 Tex. 295. Performance was postponed apparently and presumably from the standpoint of the partnership by mutual agreement until the partnership was informed on June 9, 1920, that the corporation did not intend to transfer this 128,000 feet of timber or do anything else more than it had done. We do not think the claim by the partnership for the 128,000 feet of timber was barred by the statute of limitations of two years at the time the second amended petition was filed, and that the trial court did not err in refusing to sustain this contention, and that the Court of Civil Appeals correctly ruled in approving the action of the trial court; and therefore we overrule all of the plaintiff in error's assignments of error germane to this question. Abercrombie v. Shapira (Tex. Civ. App.) 94 S. W. 392; Ewing v. Schultz (Tex. Civ. App.) 220 S. W. 625; Cruse v. Eslinger (Mo. App.) 235 S. W. 496; Southern Pine Lumber Co. v. Cameron & Co., 45 Tex. Civ. App. 350, 101 S. W. 488; National Cotton Oil Co. v. Taylor (Tex. Civ. App.) 45 S. W. 478; First National Bank of Jonesboro v. Glass, 128 Ark. 578, 195 S. W. 15; L. H. & St. L. Ry. Co. v. Baskett (Ky.) 104 S. W. 695; Ruling Case Law, par. 121, p. 755.

[6, 7] The corporation further contends that so much of the judgment as covers the claim for expenses incurred in the rescaling of the timber, amounting to more than $1,600 originally, is without support in the testimony, and that the Court of Civil Appeals erred in overruling the 17th assignment of error on this subject. This is a question of fact of which this court has no jurisdiction, since the record discloses the Court of Civil Appeals found the existence of ample facts to support the contention of the partnership with reference to these items of expense. The original contract provided for an exchange of timber. The record shows that the corporation was greatly benefited by securing the privilege of cutting timber from the partnership's lands on account of the fact that these lands were contiguous to its sawmill, and it owned no timber so conveniently situated.

The contract further provided that the timber growing on the land contiguous to the plant of the corporation belonging to the partnership should first be scaled and the amount ascertained. This was done in order that the corporation might proceed to cut the timber. Afterwards, the timber growing on the land belonging to the corporation which the partnership was to receive was scaled, and the amount of timber ascertained. This having been done, the fact was discovered that the corporation owed the partnership 821,953 feet of timber, on account of the fact that the corporation had acquired that much more timber than the partnership had. Under the terms of the contract, the corporation was bound to convey to the partnership that much timber. In the same instrument where this situation was expressed, the further fact was declared that the corporation owed the partnership for timber, cut by mistake on lands not embraced in the original contract, 128,000 feet of timber, and that the corporation agreed to convey that much timber in addition to the 821,953 feet upon a final adjustment of all the matters in difference between the parties. Some time passed, when the corporation notified the partnership that it was not satisfied with the result of the scaling of the timber and wanted the timber rescaled. After many negotiations and the elapse of considerable time, a written agreement was reached, by the terms of which the rescale was to be had. However, the partnership did not agree to pay for any part of this rescale, since it was entirely satisfied with the first scaling, except upon the finishing of the work of scaling the timber a second time, and the ascertainment of the fact that there was an error of at least 1,000,000 feet in the first scaling. The testimony discloses, and the Court of Civil Appeals so finds, that this second scaling was never finished, and the contingency upon which the partnership was to be liable for any expenses incurred in making the scale did not happen. There was much testimony introduced with reference to the circumstances which resulted in the abandonment of the work of making the second scale. The Court of Civil Appeals finds, however, that the partnership was not at fault in bringing about the abandonment of this work. This fact having been ascertained, together with the further fact that the contingency upon which the partnership was to become liable for a part of the expenses having never happened, we must conclude that if the partnership furnished any money or paid for any labor or delivered any material which was necessary to accomplish a rescale of the timber, it was an implied promise on the part of the corporation to pay for the same unless the contingency above mentioned should come to pass.

It is true that the corporation had indicated its dissatisfaction with the result of the scaling of the timber, and the partnership, while being entirely satisfied with this result, finally made a conditional agreement that another scale should be made; but the agreement expressly provided that the partnership should not be liable for the expenses unless the result of the second scale after its completion should show an error of at least 1,000,000 feet of timber, in which event it agreed to pay for the labor of the party representing it in the rescaling and one-half of the resurveying. As has been noted, much testimony was introduced on this subject, and the Court of Civil Appeals found as a fact that this contingency did not occur. Based upon this fact, the only legal question involved in this matter before this court is whether the items of expense and the prices thereof incurred by the partnership were reasonable ones. The Court of Civil Appeals having found these were proven, it follows that the corporation is liable therefor under all the circumstances of this case. It is also true that the Court of Civil Appeals found that an agreement was made to discontinue the rescaling of the timber, but that the partnership's agent did not understand the facts so as to bind his principal, and the corporation contends that, under a proper construction of the agreement, the corporation was not liable for these items of expense. It is a familiar principle of law that a party cannot claim the benefits of a part of an agreement and refuse to be bound by the remainder. We, however, think that this finding is not necessary to the decision of this case for the reasons heretofore stated. Even if this finding were necessary, we think, under the facts upon which the finding is based, the Court of Civil Appeals has correctly ruled the point, and that the authorities cited in its opinion support the ruling. See authorities cited by the Court of Civil Appeals in its opinion rendered in this case in 255 S. W. 252.

This huge business transaction, involving approximately 100,000,000 feet of pine timber, its separation from the soil upon which it originally stood, and the adjustment of the respective rights of the parties by due ascertainment and proper appreciation of every minute detail, as reflected by this record up to the date of the letter written on June 9, 1920, when the corporation for the first time indicated its decision to disregard its agreement expressed in the instrument dated March 24, 1914, is an example of fraternal co-operation of those engaged in these industrial enterprises worthy of the emulation of every one.

The record in this case is replete with evidence that those who were intrusted with the authority to act for the respective parties in this transaction, the handling of which covered a period of more than ten years, and involved important responsibilities and attention to innumerable details, were persons possessed of the highest sense of right and governed by principles of funda-

mental justice. Viewing the events proven by the testimony from the standpoint of each, no just criticism can be leveled at the attitude finally taken by either towards the solution of the questions involved in this lawsuit, since, under all the conditions, they presented a situation upon which reasonable minds have reached contrary conclusions under the limitations common to all of us. Having earnestly tried to finally agree and failed, and occupying positions of trust by reason of the confidence of those whose rights depended upon their respective decisions, like good citizens they submitted their differences to the courts as final arbiters, each with the assurance doubtless that his acts when duly analyzed would be justified by any decree rendered under the law and the facts. Those courts, to which the Constitution and the Legislature have assigned the duty to hear the testimony, and to determine the facts material to a declaration of the law applicable thereto, have discharged that duty, and the facts found indicate that the law of the case in our opinion is with the partnership, as decreed by the judgment rendered by the Court of Civil Appeals.

Therefore we recommend that the judgment of the Court of Civil Appeals reforming the judgment of the district court, and as reformed, rendered in favor of the partnership, be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.