## KOUDSI v. MATHIWOS et al.
### No. 4003.

Court of Civil Appeals of Texas. El Paso.
Nov. 14, 1940.

Rehearing Denied Jan. 23, 1941.

David E. Hume, of Eagle Pass (G. C. Jackson, of Crystal City, on the brief), for appellant.

Van Haile McFarland, of Eagle Pass, for appellees.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Maverick County that plaintiff, G. A. Koudsi, as against defendants, P. Mathiwos and Anita and Pete Camarinos, take nothing. From this judgment Koudsi duly perfected this appeal.

The respective parties will be designated as they were in the trial court.

Plaintiff, on the 26th day of October, 1937, filed his original petition wherein he alleged that he was the owner of two certain vendor's lien notes, one in the sum of $500 and the other in the sum of $400; both notes were secured by a vendor's lien on property in Maverick County, described in the petition; each note payable to Emilio Kifuri, each dated August 2, 1930; the $500 note alleged to be due on or before three years after its date, and the $400 note on or before four years; each note recited that it was given in part payment of land. Further, plaintiff alleged that he was the owner of the notes and the liens securing same by assignment dated August 16, 1936; judgment for the amount of the notes, with interest and attorney's fees, with a foreclosure of the vendor's lien was sought.

Whether the defendants Anita and Pete Camarinos filed answer does not appear from the transcript, or whether they were ever served with citation.

Defendant Mathiwos filed answer on the 28th day of March, 1939. It consisted of a

general exception, general denial, and special pleas of limitation and offset. In the plea of limitation it was set up that plaintiff's suit was filed on the 26th day of October, 1937; that no process was requested by plaintiff and no process was issued until on or about the 16th day of March, 1939, and that suit was therefore not commenced until said last named date. Articles 5520 and 5527 of the Revised Statutes were invoked. In substance, the plea of offset was that plaintiff was not the real beneficial owner of the notes, but was prosecuting the suit for one Emilio Kifuri, his assignor, and by agreement defendant was entitled to offset a certain judgment against same; or, in any event, plaintiff took the notes from Kifuri after maturity with notice of defendant's right to offset the judgment; that a $1,200 judgment had been obtained against Emilio Kifuri and A. Kifuri; that Kifuri induced defendant to sign a supersedeas bond for appeal, agreeing that the notes should indemnify defendant against any liability on the supersedeas bond; that with this agreement he, as surety, signed said supersedeas bond; that the judgment on appeal was adverse to the Kifuris, and judgment was entered on the bond against the Kifuris and defendant as their surety; that thereafter, at the special instance and request of the Kifuris defendant purchased this judgment and had same assigned to him; that before he so purchased the judgment the agreement was that said notes should be his indemnity for the amount paid for the judgment.

Plaintiff to this answer filed a supplemental petition wherein he set up, in substance, that he filed his petition with the bona fide intention that process promptly issue thereon; that with the filing of the petition he deposited ten dollars in cash with the clerk; that the term following the filing of his petition convened on March 28, 1938; that he believed that all defendants had been cited until March 18, 1939, when he was informed that no return upon said citation could be located. These allegations are coupled with the allegation that one Mike Chorgas was the agent of defendants, and that plaintiff's attorney went to Chorgas and pointed out that it would be a saving in cost if defendants would file answer and appearance; that Chorgas assured him that defendants would file answer. There is an averment that from October, 1938, to March, 1939, these representations were made from time to time and relied upon; there is a distinct averment that plaintiff did not know the citation had not been issued and served until March 18, 1939. These allegations appear in the same paragraph of the supplemental petition. The supplemental petition admits the allegation of defendant as to the judgment against the Kifuris, and that said judgment is still unpaid and subsisting, but denies all other allegations with reference thereto.

The trial was to a jury. Special issues were submitted as follows:

"Special Issue No. 1: From a preponderance of the evidence, do you find that on or subsequent to October 26, 1937, and prior to August 3rd, 1938, Mike Chorgas was authorized by the defendant Pablo Mathiwos, to act for him in relation to the matters in controversy in this suit?"

"Special Issue No. 2: From a preponderance of the evidence, do you find that, subsequent to October 26, 1937, and prior to August 3, 1939, Mike Chorgas acted for Pablo Mathiwos and represented, or stated to D. E. Hume, attorney for the plaintiff, Geo. A. Koudsi, that the said Pablo Mathiwos would file, or cause to be filed a waiver of the issuance and service of citation in this suit on him, the said Pablo Mathiwos?"

"Special Issue No. 3: From a preponderance of the evidence, do you find that the plaintiff's attorney, D. E. Hume, was induced to refrain from having citation issued and did refrain from having citation issued and served in this suit on Pablo Mathiwos subsequent to October 26, 1937, and prior to August 3, 1938, by the representation, if any, of Mike Chorgas that the defendant, Pablo Mathiwos, would waive the issuance and service of citation upon him in this suit?"

"Special Issue No. 4: From a preponderance of the evidence, do you find that the plaintiff, Geo. A. Koudsi, was, on October 26, 1937, the real and beneficial owner of the two promissory notes involved in this suit?"

Issues numbers 1 to 3, inclusive, were found in the affirmative, and number 4 in the negative.

In the record appears no exception to the court's charge by either party, and request for additional issues does not appear to have been made by either party. Each party moved for judgment on the verdict, and the motion of defendant was granted.

Unless the notes were either barred by limitation or extinguished by the offset pleaded by defendant, plaintiff was entitled to recover.

■ Lack of beneficial ownership was not a defense. Legal ownership was clearly vested in plaintiff and this was sufficient. Johnson v. Mitchell, 50 Tex. 212, 32 Am. Rep. 602; Jones v. Butler, Tex.Civ.App., 42 S.W. 367; Edwards v. Hatch, Tex.Civ. App., 106 S.W.2d 741.

Issues numbers 1 to 3 are not a clearcut submission of the issue of limitation. As we construe that, the issue of estoppel on the part of defendant to rely on the defense of limitation is submitted. This statement may be too broad, as some of the evidence of an avoidance of the requirement of the statute for the prosecution of the suit within four years may be submitted by special issue No. 3.

This suit was filed within four years from the maturity of the notes. The question, then, is, so far as limitation is concerned, Was there a prosecution thereof within the four-year period? Citation did not issue from October 26, 1937, to March 16, 1939. When citation issued, more than four years had elapsed from the maturity date of the note last due.

■ If plaintiff causes the suppression of citation after the filing of his suit, limitation is not interrupted until citation is issued. Austin, Banking Commissioner, v. Proctor, Tex.Civ.App., 291 S.W. 702; Meyer v. Pecos Mercantile Co., Tex.Civ. App., 47 S.W.2d 435.

■ On the issue of suppression of the citation the evidence conflicts. Plaintiff and his counsel each denied instructing the clerk not to issue the citation. The District Clerk testified that he did not issue the citation because he had been instructed by either Mr. Hume, counsel for plaintiff, or Mr. Koudsi, not to issue same. The issue was not submitted to the jury. However, from the statement of facts it indisputably appears that a short time after the filing of the suit plaintiff had notice that citation had not issued. While one may rely on the clerk to issue process, but if he have notice that same has not issued, it is then his duty to use diligence and see that process is issued and served. First State Bank & Trust Co. v. Ramirez, 133 Tex. 178, 126 S.W.2d 16, 18.

In this case this proposition is quoted with approval: "It is the settled law of this state that the mere filing of the petition in a suit of this nature does not toll the statute of limitations. There must be a bona fide intention also that process be issued and served and due diligence exercised that such process issue and be served." A long list of authorities is cited in support of the quoted proposition.

Nearly a year and a half elapsed from the filing of the suit until the issuance of the citation. There is no evidence that during this time defendants were out of Maverick County. It might be, as a matter of law, in the absence of any excuse, that plaintiff was guilty of negligence in the prosecution of his suit. Buie v. Couch, Tex.Civ.App., 126 S.W.2d 565.

However, as has been before stated, the three issues answered in favor of plaintiff have perhaps a bearing on the issue of negligence as well as estoppel.

■ If the defendant, through his authorized agent, Chorgas, represented to plaintiff that defendant would waive the issuance of citation, and this was relied upon by plaintiff, it would operate both as an estoppel and negative negligence. One cannot rely, as a defense, on the failure of another to prosecute his suit, where his own conduct and representation is the assigned cause of such failure. Bering Mfg. Co. v. Carter & Bro., Tex.Com.App., 272 S.W. 1105.

We do not believe the trial court rendered judgment on the theory that plaintiff's cause was barred by limitation. In our opinion, the judgment was based on the theory of offset. In other words, that plaintiff's assignor was indebted to defendant in a sum equal to or greater than plaintiff's claim.

■ Plaintiff was the assignee of the claim sued on. The finding of the jury was that he was not the beneficial owner thereof. If he was not the beneficial owner thereof, his assignor was the beneficial owner. We think the evidence is ample to sustain the finding that plaintiff was not the beneficial owner of the notes. As has been said, his legal title was sufficient to maintain an action thereon. However, if plaintiff was not the beneficial owner of the claim, and Emilio Kifuri was the real owner, then defendant was entitled to offset the judgment. Eason v. Locherer, 42 Tex. 173; Articles 2014–2017, R.S.

Furthermore, there was some evidence that there was an agreement that the two

claims should be offset. This issue was not submitted to the jury, and we think it unnecessary to decide whether it was ultimate or subsidiary, or to decide whether there was evidence sufficient to justify its submission.

If Kifuri was the beneficial holder of the notes, defendant's rights to set-off is very clear.

The judgment of the trial court was that plaintiff take nothing as against defendants. This judgment is justified if one claim extinguished the other. If defendant's claim was equal in amount to the claim of plaintiff, a take nothing judgment could, perhaps, be sustained, or, in any event, would do no harm to either party.

Under the undisputed facts defendant Mathiwos acquired this claim for the sum of $460. The contract by which he acquired same was entered into on the 1st day of October, 1936. The judgment was in the sum of $1,200, and bore interest at the rate of six per cent per annum from the 6th day of September, 1933.

It will be helpful to determine the exact rights acquired by defendant against the Kifuris by virtue of the premises. Most certainly he was entitled to indemnity. The question is, Was he entitled to enforce the judgment for an amount in excess of an amount sufficient to indemnify him?

In the case of Beville v. Boyd, 16 Tex. Civ.App. 491, 41 S.W. 670, 671, 42 S.W. 318 (reversed by the Supreme Court, 91 Tex. 439, 44 S.W. 287), it was said: "Of course, equity would not allow the surety to speculate off his principal by taking up the note at a discount, and then recover the full amount." This was said arguendo, and had no special and direct bearing on the disposition of the case.

In Stearns on Suretyship, 3rd Ed., § 283, this quotation is made from the case of Matthews v. Hall's Adm'r, 21 W.Va. 510: "If the surety discharges the debt of his principal in whole or in part for any sum less than the full amount he so discharges, he can, in the absence of an express contract, recover from his principal only the amount actually paid by him. The implied contract in such case is that the surety shall be indemnified only, and he will not be allowed to speculate out of his principal."

Brandt asserts the same proposition in almost the identical language quoted above.

Brandt, Suretyship & Guaranty, Vol. 1, 3rd Ed., § 233.

In the case of Edmonds v. Sheahan, 47 Tex. 443, it was held, as between co-sureties, the amount that plaintiffs were entitled to recover of their co-surety was regulated by what they actually paid and not by the amount of the judgment discharged.

■ There are authorities holding that a surety may purchase the obligation of his principal for less than its face and enforce same to its full extent. The better rule seems to us to be that such surety is entitled to indemnity only.

It follows that the judgment of the trial court should be reversed and here rendered, so that plaintiff recover on the notes and for a foreclosure of the lien, with interest and attorney's fees, less $460, same to be credited on the obligation to plaintiff as of October 1, 1936.