**Robert L. MOODY, Plaintiff,**

v.

**Edward L. KIRKPATRICK, Jr., et al.,**
**Defendants.**

**Civ. No. 3251.**

United States District Court
M. D. Tennessee,
Nashville Division.

Oct. 15, 1964.

538

W. Raymond Denney, of Denney, Leftwich & Lackey, Nashville, Tenn., for plaintiff.

William Waller, Sr., and Robert G. McCullough, of Waller Lansden & Dortch, Nashville, Tenn., for defendants.

WILLIAM E. MILLER, Chief Judge.

In January of 1960, the remaining defendant in this action, Jack M. Bass, Jr., together with the plaintiff and six others entered into a written agreement with the United States Sulphur Corporation, a Texas corporation with a mine and plant under construction at High Island, Texas, and Harry T. McClain, the principal (88%) stockholder and President of the Corporation, in which they agreed to guarantee to the River Oaks Bank of Houston, Texas, a $225,000 loan to the Corporation in return for royalties on minerals mined and sold by the Corporation, options to purchase stock from McClain, and the voting rights to McClain's stock during the period that the guaranteed obligation remained unsatisfied. The agreement fixed the respective interests of the guarantors in the royalties, options and voting rights and thereby their liabilities for the loan as follows:

| | | |
|---|---|---|
| Harold W. Clark, B. W. Landstreet III, Edward L. Kirkpatrick, Jr. and William Nelson II | 27.77% | $62,500 |
| Thomas H. Murphy and John H. Lowell | 27.77% | $62,500 |
| Jack M. Bass, Jr. | 22.22% | $50,000 |
| Robert L. Moody | 22.22% | $50,000 |

Soon after the execution of this agreement, the River Oaks Bank loaned the Corporation $225,000. In February 1961, this debt was transferred to the Bank of Texas of Houston, Texas, the eight guarantors signing a continuing guaranty (the subject of this action) in which they jointly and severally guaranteed payment of the obligations of the Corporation to the latter bank to the extent of $225,000. The Corporation executed a six-month promissory note with a due date of August 15, 1961.

Between January 1960 and August 1961, all of the guarantors, except plaintiff Moody, made substantial investments in the foundering Corporation in the form of loans and additional guarantees. On August 10, 1961, one of the guarantors, who had assumed the Presidency of the Corporation, requested the plaintiff to make a loan to the Corporation to be used to pay the interest on the maturing note and to defray expenses which would be incurred in renewing the loan for an additional six months. Moody refused to make the loan, objected to the extension of time for payment, and offered to pay his share of the principal of the note. Moody did not, however, notify the guarantee bank that he was revoking his guaranty.

On August 15, the Corporation renewed the loan, executing another six-month promissory note. When this note became due on February 13, 1962, the Corporation was unable to make payment. The loan was not renewed. On March 23, 1962, Moody paid the Bank of Texas $225,000 plus $6,781.25 in interest from August 15, 1961. The bank assigned the note and guaranty to Moody.

Invoking the diversity jurisdiction of this Court, Moody filed suit against five co-guarantors who resided in Nashville, Tennessee. He has settled with four as follows:

| | |
|---|---|
| Harold W. Clark | $15,625 cash |
| B. W. Landstreet III | $15,625 cash |
| Edward L. Kirkpatrick, Jr. | $15,625 ten-year note |
| William Nelson II | $ 1,000 cash |
| | $14,625 ten-year note |

Moody alleges that the other two guarantors reside in Colorado and are insolvent. He seeks to recover from the remaining guarantor Bass on the assigned note and guaranty (1) an amount in excess of the latter's agreed proportion of the obligation by way of the joint and several liability provision of the guaranty; and (2) attorneys' fees pursuant to the provisions of the note and guaranty. In the alternative, by an amendment, Moody seeks recovery in contribution.

One of the defenses is that the defendant signed the guaranty in Tennessee and that under Tennessee law the note is usurious on its face and therefore void, since it provides for interest at the rate of 10% per annum after maturity, Bang v. Windmill Co., 96 Tenn. 361 (1896). Both parties have moved for summary judgment on the pleadings, exhibits, affidavits and depositions on file.

■■ When the jurisdiction of this court rests solely upon the diversity of citizenship of the parties before it, it must endeavor to reach the same outcome as a comparable court of the state in which it sits. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 60, 89 L.Ed. 560 (1945). Problems in conflicts of laws must be resolved by the application of the conflicts rules of that state. Tennessee follows the general rule that the validity of a contract and the substantive rights of the parties to it are to be governed by the law which the parties intended. In the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into. Deaton v. Vise, 186 Tenn. 364, 210 S.W.2d 665 (1948).

■ The usual contract of guaranty is unilateral, the guarantor's offer of guaranty being accepted by the act of the guarantee in extending credit to the principal debtor. 38 C.J.S. Guaranty § 3, at 1133 n. 31. While there do not appear to be any Tennessee conflicts decisions involving a guaranty contract, the Tennessee courts have discussed guaranty in terms of an offer which is accepted by the act of the guarantee. Mountain City Mill Co. v. Lindsey, 8 Tenn.App. 337, 351 (M.S.1928); Villines v. Parham-Lindsey Groc. Co., 6 Tenn.App. 254, 262 (M.S. 1927).

A conflicts decision from another jurisdiction which would appear to be directly in point is C. I. T. Corp. v. Sanderson, 43 F.2d 985 (E.D.Idaho 1930). A contract of guaranty was held valid and enforceable in a federal district court in Idaho against a married woman who had signed the guaranty in that state, the laws of said state denying to married women the power to enter into such contracts. The guarantee resided in a state which did permit married women to so contract. The contract was construed to have been made in the latter state where the offer of guaranty was accepted by the extension of credit.

This is not to say that a contract of guaranty might not be bilateral with the last act necessary to make it binding being the signature of the guarantor. In Davis v. Wells, 104 U.S. 159, 26 L.Ed. 686 (1881), the Supreme Court found such a guaranty contract. It was, however, a guaranty for an existing debt and recited the receipt of consideration from the guarantee.

■ The guaranty contract which is the subject of this suit gives every indication of being the usual unilateral contract. The defendant, the plaintiff and the other guarantors appear to have made an offer to the guarantee bank which the latter accepted, first by making the original loan to the Corporation and again by extending the time for payment. The instrument which all of the guarantors signed is so worded:

"This is a continuing guaranty and all extensions of credit and financial accommodations concurrently herewith or hereafter made by Bank to Borrower *shall be con-*

*clusively presumed to have been made in acceptance hereof.*" (Emphasis added.)

Thus, the contract of guaranty was entered into in the state in which the guarantee bank extended credit to the Corporation—Texas. Under the Tennessee conflicts rule, the validity of the guaranty and the rights of the parties to it are to be governed by the substantive law of Texas. This result is in accord with the weight of authority:

"So, if an offer of guaranty is made in one state and accepted and acted on in another, it is held to be a contract of the latter state and governed by the laws thereof." 38 C.J.S. Guaranty § 3, at 1133.

■ It should also be pointed out that the place of performance of a guaranty contract is generally presumed to be the guarantee's place of residence. Ibid. This strengthens the presumption that the parties to the present guaranty contract intended it to be governed by the law of Texas. Bond v. John V. Farwell Co., 172 F. 58 (6th Cir. 1909).

Since the interest rate provided for in the note is not alleged to be usurious under Texas law, the note and guaranty are enforceable in a federal district court in Tennessee. Bond v. John V. Farwell Co., supra.

■ However, under the decisions of the Texas courts the plaintiff is not entitled to maintain an action on the note and guaranty against the defendant. The Supreme Court of Texas has held that a co-obligor cannot recover from another co-obligor on the contract creating the common liability because the obligation was satisfied and extinguished by the plaintiff's payment. Faires v. Cockerell, 88 Tex. 428, 31 S.W. 190, 28 L.R.A. 528 (1895). The Texas courts have adhered to this reasoning to such an extent as to hold that a co-judgment debtor's purchase of the judgment from a complete stranger extinguished the judgment for the purpose of bringing an action on it against another co-judgment debtor.

Huggins v. Johnston, 3 S.W.2d 937 (Tex. Civ.App.1927).

The Faires rationale has been criticized but this criticism has appeared in suits against the principal debtor in which the rationale has been rejected. Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663 (1931). The Court of Civil Appeals has emphasized the importance of observing the distinction between suits against co-obligors and suits against the principal debtor. Beville v. Boyd, 16 Tex.Civ.App. 491, 41 S.W. 670 (1897).

In each of these cases the complaining party desired to bring his action on the contract in order to receive the benefit of the longer statute of limitations for actions on written instruments. This, of course, is not the purpose of the present plaintiff in attempting to maintain his action on the note and guaranty. Nevertheless, the rationale of these decisions controls. The recovery of attorneys' fees has been specifically considered and rejected, Acers v. Curtis, 68 Tex. 423, 4 S.W. 551 (1887), and no Texas appellate court apparently has ever given even passing consideration to an attempt by a co-obligor to recover on the contract more than the defendant's proportionate share of the common liability.

The only decision from any jurisdiction which has been discovered which permitted a co-guarantor to recover on the contract of guaranty from other co-guarantors is one which also involved the statute of limitations. Manuel v. Hicks Iron Works, 216 Cal. 459, 14 P.2d 756 (1932). To permit recovery the court had to find such special circumstances as an agreement by the defendant guarantors to remain liable on the guaranty after payment by the plaintiff.

■ While clearly denying the plaintiff the right to maintain an action on the note and guaranty, these decisions just as clearly indicate that the plaintiff is entitled to contribution. The right to contribution arises the moment that one co-obligor pays more than his share of the common liability. Stearns, Surety-

ship § 11.25 (Elder's Rev., 5th ed. 1951). This the plaintiff did when he paid the guarantee bank the principal and interest due on the note. The common liability of all of the co-guarantors who were jointly and severally liable on the contract of guaranty was the full amount paid by the plaintiff, $231,781.25. Although there does not appear to be a decision by the Texas courts in point, the general rule is that guarantors are liable for interest even though interest plus principal exceeds the stated limits of the guaranty. 38 C.J.S. Guaranty § 57.

 Thus the remaining question before the Court is: How much of the common liability may the plaintiff recover from this defendant in an action for contribution? The extent of recovery is a matter of remedy and, under the general and Tennessee conflicts rule, is to be governed by the law of the forum. Sherwin-Williams Co. v. Morris, 25 Tenn.App. 272, 156 S.W.2d 350 (M.S.1941).

 Since a federal court in a diversity case is in effect acting as another court of the state, the outcome in the federal court should not be materially different from that which would prevail in the courts of the state regardless of whether the issue is one of substantive or procedural law. Guaranty Trust Co. v. York, supra.

 In the instant case two of the guarantors are alleged to be insolvent and the record shows that they reside outside of the jurisdiction of the Court. While the Tennessee courts apparently have not decided the question, most other jurisdictions equate absence from the jurisdiction with insolvency for the purpose of apportioning the common liability among the co-obligors. Stearns, op. cit. supra, § 11.29. Since this is the well established general rule, there is no reason to believe that the Tennessee courts would not be in accord if the question were presented to them. The percentage of the common obligation of such two guarantors is 27.77%.

 The determination of the amount of recovery is somewhat difficult of solution since two distinct rules have been developed for apportioning the common liability where there are insolvent co-obligors. Contribution is of equitable origin but it has long been enforced in courts of law on the basis of an implied contract entered into concurrently with the contract creating the common obligation. Hickman v. Searcy's Executors, 17 Tenn. 47 (1836). Adherence to the concept of an implied contract caused the law courts to develop the rule that each co-obligor is liable only for his aliquot portion of the common debt, no consideration being given to the insolvency of other co-obligors since each impliedly promised to pay only what was at the time his share of the common obligation. Riley v. Rhea, 73 Tenn. 115 (1880). The rule in equity, however, based on the maxim that equality is equity, is that the common liability must be apportioned among the solvent co-obligors. Gross v. Davis, 87 Tenn. 226, 11 S.W. 92 (1889).

 The plaintiff has filed an amendment to his complaint in which he claims contribution, and although it is not entirely clear whether the claim as stated in the amendment is for legal or equitable contribution, it will be construed liberally under the Rules as a broad claim for contribution whether legal or equitable. It is clear that if the plaintiff were suing in a court of equity in the State of Tennessee, he would be entitled to recover on the basis of the equity rule prevailing in that state. The same result, therefore, can be reached by this Court sitting as a court of equity by application of the Tennessee equitable rule.

 It is true that the original complaint sought a recovery on the theory that the plaintiff was the assignee of the note and was therefore entitled to a full recovery against the co-obligors jointly and severally, and it is also true that in one of the oral arguments plaintiff's counsel stated in reply to a question from the Court that he was not interested in recovery on the theory of contribution. Yet the doctrine of election of remedies insisted upon by the defendant

has a very limited application under the Federal Rules and should not be applied in such manner as to defeat the substantial rights of the parties. Although in the courts of law a contract was implied in order to effect contribution, the right of contribution originated in equity and remains essentially an equitable right. The fact that the law courts chose to enforce such a right through the fiction of an implied contract, and thereby developed a different rule of recovery, should not compel a court having jurisdiction of both legal and equitable actions to apply the legal rule or to adhere strictly to the doctrine of election of remedies. In fact, the modern trend is to apply the equitable rule regardless of whether the action may be characterized as being in law or in equity, Stearns, op. cit. supra, § 11.28, apparently because the equitable rule prevents a disproportionately heavy burden from being placed on the co-obligor who happens to be called upon first by the creditor.

The Court is of the opinion that the facts of the case, as to which there is no material dispute, establish the plaintiff's right to recover contribution on the basis of the equitable rule.

The common liability of $231,781.25 must, therefore, be apportioned among the five Tennessee guarantors and the plaintiff in accordance with their agreement of January 1960, thus making the defendant Bass' share of the liability

$$\frac{22.22}{72.23} \times \$231,781.25 \text{ or } \$71,295.91.$$

In his supplemental memorandum brief the plaintiff has agreed to give the defendant a credit of $3,999.60, and on this basis the plaintiff is entitled to a net recovery of $67,296.31.

Since the record fails to show that a formal order has been entered allowing the plaintiff's amendment to the complaint which was marked filed by the Clerk on July 2, 1964, an order allowing such an amendment will be presented to the Court for approval. In addition, a form of judgment will be submitted for the Court's approval, sustaining the plaintiff's motion for summary judgment to the extent herein indicated, allowing the plaintiff a recovery against the defendant Bass in the amount of $67,296.31 and denying the defendant's motion for summary judgment.