**UNITED STATES of America,
Plaintiff,**

v.

**Kelly P. RYAN et al., Defendants.**

**Civ. No. 03369.**

United States District Court,
D. Nebraska.

Jan. 5, 1972.

William K. Schaphorst, Asst. U. S. Atty., Dist. of Neb., for plaintiff.

Douglas W. Reno, Omaha, Neb., for defendant Ryan.

A. C. Sidner, Fremont, Neb., for defendant Hammond.

James P. Monen, Omaha, Neb., for defendant Sidles.

**1346**

## MEMORANDUM DECISION

DENNEY, District Judge.

This civil action was brought by the United States of America against individual defendants Kelly P. Ryan (hereafter Ryan) and Boyd R. Hammond (hereafter Hammond) and corporate defendant Sidles Enterprises, Inc. (hereafter Sidles), as guarantors on a loan procured from the United States National Bank of Omaha (hereafter the Bank), guaranteed by the United States Navy (hereafter the Navy). The purpose of the entire transaction was to enable Kelly Ryan Equipment Company (hereafter the Company) to construct refrigerated barges for the Navy under contract.

Jurisdiction is in the Court pursuant to 28 United States Code § 1345.

The following shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

There are many separate documents involved in the transactions of the parties to this action and, for the purpose of clarity, it would be best to use some sort of abbreviation of their titles in designating which document is being considered hereafter. The major documents involved will be denominated as follows:

The central document around which the others accumulated was the "Loan Agreement" executed by the Bank and the Company on August 28, 1951, establishing a revolving credit plan under which the Company could draw up to $300,000 upon notes executed to the Bank. That document will be designated by its title "loan agreement." Ryan and Hammond executed a "Guaranty" on August 28, 1951, wherein they personally guaranteed any balance outstanding under the Loan Agreement. That document will be designated "individual guaranty." On September 6, 1951, the Bank and the Navy executed the "V-Loan Guarantee Agreement." The Navy guaranteed to the Bank the payment of 90% of the outstanding balance under the loan agreement. That document will be designated "V-Loan guaranty." On July 6, 1954, Sidles executed the "Guaranty" to the Bank and Navy with a limit of $35,000 on its liability. That document will be designated "Sidles guaranty."

The original maturity date on the loan agreement establishing the revolving credit of $300,000 was January 31, 1952. However, on May 10, 1952, the maturity date for the loan agreement was extended and by December, 1953, a total of five amendments to the loan agreement had moved the maturity date to October 31, 1954.

On March 8, 1954, the final promissory note under the loan agreement was executed by the Company for $300,000.

Then, on July 6, 1954, a complete renegotiation of the financing situation was conducted. The "extension agreement" was executed on that date to become effective when the amount due on the debt of the Company was reduced to $195,000 with interest current; an agreement of even date by the Bank, the Navy, the Company and Sidles was executed; and a first mortgage upon all of the real estate and "substantially" all of the chattels of the Company were executed to secure the debt.

The "agreement of even date" is contained in the agreement letter of July 6, 1954, setting forth various terms as well as reciting that a "guaranty" accompanied said agreement letter. The Sidles guaranty is of even date with this letter. Also, the real estate and chattel mortgages were executed as agreed.

The extension agreement mentions the following security for the note:

(1) the assignment of the barge contract between the Company and the Navy, NObs 5541;

(2) the 90% V-Loan guaranty;

(3) the "agreement of even date" which required and was accompanied by the Sidles guaranty; and

(4) the chattel and real estate mortgages.

The last paragraph of the extension agreement states as follows:

And the parties to this agreement hereby consent to said extension, and agree that all *said* security for said debt above described shall continue and that said note and all *said* security shall remain in force except as herein modified. (Emphasis added)

Neither the extension agreement, nor any of the other documents of July 6, 1954, makes any mention of the individual guaranty of Ryan and Hammond.

The first payment under the new agreement was due January 31, 1956. On February 7, 1955, the Company filed its petition in reorganization under Chapter X of the Bankruptcy Act in the United States District Court for the District of Nebraska, Proceeding No. B10–55. The amount due and owing the Bank from the Company at that date was $194,900. The Navy received an assignment of 90% of the debt from the Bank under the V-Loan guaranty, containing its 90% guaranty and assumed the entire claim, issuing a "Participation Certificate" to the Bank for the remaining 10% on February 16, 1955.

Under the reorganization proceeding, a total of $102,294.50 was received by the Navy and Bank. The trustee in reorganization sold the assets of the Company secured under the loan agreement for an amount in excess of the debt remaining due from the Company to the Navy and Bank but after charging an administration expense assessment of 20%, the final amount distributed equaled $62,366.21, which the Navy applied to the interest which had accrued under the agreement during the course of the reorganization proceeding. The final approval of the distribution was by order entered December 17, 1968. Distribution of the $62,366.21 was accomplished on July 31, 1969.

Separate demand was made for the first time upon Ryan, Hammond and Sidles on July 18, 1969. On September 9, 1969, the present action was commenced, seeking recovery against Ryan, Hammond and Sidles upon their respective guaranties.

Whether due to the lack of an overriding federal interest, or due to the adoption of state law for the purpose of delineating federal law, *see* United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 [1966], Nebraska law will be applied to determine the effect of the guaranties involved in the present action.

In the present action, the documents around which the liability of the guarantors centers were executed and to be performed in Nebraska. Therefore, Nebraska would apply its own domestic law to determine the effect of the guaranties. Dunlop Tire & Rubber Corp. v. Ryan, 171 Neb. 820, 108 N.W.2d 84 [1961].

## THE GUARANTY OF RYAN AND HAMMOND

The document executed by Hammond and Ryan was properly denominated a guaranty. *See e. g.* In re Williams' Estate, 148 Neb. 208, 26 N.W.2d 847, 851 [1947]. The guaranty of Hammond and Ryan executed August 28, 1951, was executed contemporaneously with the loan agreement between the Bank and the Company. The loan agreement, by its original terms, was not to be extended beyond January 31, 1952. Later extensions under the loan agreement brought the maturity date of loans thereunder to October 31, 1954.

The extension agreement of July 6, 1954, and agreement letter of even date, although extending the maturity date of the Company note, did not extend the loan agreement with its provisions for revolving credit. It was a complete renegotiation of the credit arrangement between the parties. Recited within the extension agreement and agreement letter are all items intended as security for the new agreement except the guaranty of Hammond and Ryan. In addition, the new agreement released the Company from the requirements that progress payments under its barge construction

contract with the Navy be applied to the debt under the loan agreement. The new agreement also required the Company to execute real estate and chattel mortgages over substantially all its assets for the benefit of the Bank and the Navy.

The intention of the parties, as gleaned from the documents surrounding the renegotiation of the Company's credit standing on July 6, 1954, was to substitute the new security taken for the guaranty of Hammond and Ryan. See 38 Am.Jur.2d Guaranty § 85.

■ However, since the guaranty of Hammond and Ryan was absolute, they could not be held liable for the amount now due the government in any event. A guarantor under an absolute guaranty, may be proceeded against immediately upon default, and a secured creditor may not charge against that guarantor the costs of proceedings *unnecessarily* expended. United States v. Anderson, 366 F.2d 569 [10th Cir. 1966].

■ In the present action, the creditors proceeded to enter into and participate in the reorganization proceedings under Chapter X of the Bankruptcy Act. Administrative expenses charged against the creditors reduced the amount received below the amount of the debt due. Thus, in essence, the government is seeking from the guarantors Hammond and Ryan the costs of the reorganization proceedings wherein the security for the debt was liquidated. Under the holding and rationale of *Anderson*, supra, this cannot be done where the guarantors are bound under an absolute guaranty because the creditor does not need to pursue any security to hold them liable.

This is not to say that the participation of the government in the reorganization was not entirely proper. The participation in the reorganization proceedings was merely unnecessary as to the liability of Hammond and Ryan.

## THE GUARANTY OF SIDLES

As an integral part of the renegotiated financing arrangement between the Bank, the Navy and the Company, Sidles executed a "Guaranty" on July 6, 1954. That guaranty provided, in part, as follows:

> NOW THEREFORE, in consideration of the extension of time of payment of said indebtedness as requested by KELLY RYAN EQUIPMENT COMPANY, the undersigned does hereby guarantee unto THE UNITED STATES NATIONAL BANK OF OMAHA, its successors or assigns, and unto the DEPARTMENT OF THE NAVY OF THE UNITED STATES OF AMERICA, its successors or assigns, the payment of said obligation of $195,000.00; Provided that all security taken for the payment of said indebtedness be first exhausted and applied upon said indebtedness, and further provided that in no event shall the liability of the undersigned upon this guaranty exceed the sum of $35,000.00.

> DATED this 6th day of July, 1954.

> SIDLES COMPANY

It is obvious that the Sidles guaranty is a "conditional" guaranty. *See e. g.* 38 C.J.S. Guaranty § 7, p. 1139. Although the guaranty states that it is one of "payment", it is clearly one of "collection" since it is preconditioned upon prior resort to other collateral. *See* Annotation 4 A.L.R.2d 138, § 1 [1949].

No attack is made upon the validity of the Sidles guaranty. Sidles seeks to avoid liability upon the guaranty on several other grounds. First, that plaintiff failed to use due diligence in the collection of the debt from the security of the Company. Second, that the amount for which the security sold during the reorganization proceeding exceeded the amount due the plaintiff. However, plaintiff received substantially less than the amount due because of the charge of administrative costs against its share of the proceeds. Sidles asserts that it cannot be held liable for plaintiff's loss due to administrative expenses. Third, Sidles asserts that it cannot be held liable

for interest accrued on the principal obligation since its guaranty did not expressly cover interest.

(a) Due Diligence.

The extension agreement of July 6, 1954, extended the maturity date of the principal obligation so that the first payment thereunder fell due on January 31, 1956. On February 7, 1955, the Company filed its petition in reorganization under Chapter X of the Bankruptcy Act. Any claim of Sidles that plaintiff failed to use due diligence in the application of the security to the obligation of the Company prior to February 7, 1955, cannot stand since the Company was not in default under the extension agreement before that date.

The condition precedent under the Sidles guaranty was the application of the proceeds from the security taken under the July 6, 1954, agreement to the indebtedness of the Company. The government's security from the Company consisted of a chattel mortgage and a real estate mortgage. Upon the initiation of the reorganization proceedings, any action by the government seeking to foreclose upon that security was impossible due to the automatic stay provided as to actions *in rem* under section 148 of the Bankruptcy Act, 11 U.S.C. § 548.

■ The Court finds, from the evidence, that the government did everything within its power to pursue the security and apply it to the indebtedness. The government exercised due diligence in fulfilling that duty.

It should be noted that Sidles also participated in the reorganization proceedings and, given that participation, could easily have taken any steps it deemed advisable to protect its interests. Since it took no such steps, it can only be assumed that hindsight, especially after the commencement of litigation, is far superior to foresight.

(b) Administrative Expenses.

■ Sidles now claims that the holding of United States v. Anderson, *supra,* frees it from any liability under its guaranty because the security sold for more than the amount of indebtedness due from the Company. The distribution from the reorganization proceedings was less than the amount of indebtedness because of the deduction of administrative expenses.

In the District Court opinion in United States v. Anderson, 226 F.Supp. 932 [D.Colo.1964], the court made its determination that the guaranties were released upon rather questionable grounds. The Circuit Court opinion, 366 F.2d 569, affirming the opinion of the District Court, did so on the ground that an absolute guarantor, because of the fact that nothing need be done after default in order to have a remedy against him, cannot be charged with the expenses of pursuing the principal debtor. This much narrower holding is wholly consistent with the opposite result as to a conditional guarantor.

The condition of the Sidles guaranty reads as follows:

> Provided that all security taken for the payment of said indebtedness be first exhausted and applied upon said indebtedness . . . ..

It is evident from this language that the guaranty required that the mortgaged real estate and the mortgaged chattels be liquidated and the proceeds applied to the indebtedness before any right of action could accrue against Sidles upon its guaranty. *See* Swank v. Mortgage Investment Co., 83 F.2d 868 [5th Cir. 1936].

Given this condition, it was imperative that the collateral be exhausted in whatever manner possible. As noted before, because of the provisions of the Bankruptcy Act, the government had to pursue the security through the reorganization proceedings. It could have objected to the reorganization as not having been brought "in good faith" but from the evidence before the Court it does not appear that the government could or even should have made such an attempt. Since Sidles was also a participant, if it desired that the proceedings be blocked it could have attempted to do so.

It cannot be said that the parties did not expect that there would be expenses incurred in the exhaustion of the security. The Court finds that such expenses were anticipated by the conditional Sidles guaranty and, in fact, were required to be expended by its very terms. The guarantor was to be liable if the proceeds *applied* to the indebtedness left a balance due to the creditors. *See* Anno. 4 A.L.R.2d 138 [1949]. Thus, Sidles, having executed a valid conditional guaranty of collection, cannot claim the benefit of the *Anderson* holding nor that the expenses of collection were unanticipated.

(c) Interest.

Sidles alleges that it cannot be held liable under its guaranty for interest upon the principal obligation accruing prior to the liquidation in the reorganization proceedings and demand for payment by the government.

The Sidles guaranty is ambiguous as to whether it includes within its coverage interest accruing upon the indebtedness of the Company. It does not, however, in the present situation, make any difference whether the parties intended interest to be covered by the Sidles guaranty or not. The balance due on the principal amount as of January 27, 1969, was $92,605.50, plus accrued interest above and beyond that amount. Sidles is now being called upon to pay $35,000.00 of that *principal* and no interest up to the date of demand.

Sidles argues that the government should have applied the $62,366.21 final disbursement under the reorganization proceedings to the principal of the indebtedness. The government, however, applied the disbursement to the interest due. The agreement between the principal debtor and the government called for application of payments first to interest and then to the principal balance.

Thus, the Court finds that Sidles is liable under its guaranty to the government for $35,000.00.

## INTEREST FROM DEFAULT

■ The government, in its prayer, seeks recovery of interest from Sidles from the date of default. More accurately, the government is entitled to interest at the legal rate from the date of the occurrence of the condition of Sidles guaranty. Thus, the government will receive interest upon the $35,000.00 due from Sidles upon its guaranty from July 31, 1969, at an annual rate of 6% simple interest.

Moody v. Kirkpatrick, 234 F.Supp. 537 [M.D.Tenn.1964].

It is therefore the finding of the Court that plaintiff, United States of America, shall recover nothing in this action as against defendants Kelly P. Ryan and Boyd R. Hammond. It is further the finding of the Court that plaintiff recover from defendant, Sidles Enterprises, Inc., the sum of Thirty-five Thousand Dollars ($35,000.00), plus interest at the rate of six per cent (6%) simple from July 31, 1969, and that the costs of this action should be taxed against defendant, Sidles Enterprises, Inc.

Judgment shall be entered in accordance with the foregoing findings by the Clerk of this Court, pursuant to Rule 58 of the Federal Rules of Civil Procedure.